SETH C. 'WHITEHOUSE *vs.* DAVID P. BOLSTER, Trustee, and FAUSTINA M. BOLSTER, Claimant.

Kennebec.     Opinion August 7, 1901.

*Parol Trust.   Fraudulent Conveyance.   Exceptions.   Surety.*

In legal contemplation, a surety on a bond becomes the creditor of his co-surety at the time he signs the bond.

Exceptions to an instruction which removes a material question of fact from the consideration of the jury will be sustained, if there was any evidence, or legitimate inferences from the evidence, that tends to support the contention of the excepting party.   On the other hand, if there is no evidence from which a jury would be warranted in finding the fact in question, the instruction will be regarded as immaterial and harmless.

Although the evidence is undisputed, yet if different legitimate inferences may be drawn from it, it presents a question of fact for the jury.

When a testator or ancestor makes known to his devisee or heir his desire that his property shall be disposed of in a particular manner, and that he relies upon the latter to carry his desire into effect, and the devisee or heir uses words or does acts calculated to cause, and which he knows do in fact cause the testator or ancestor to believe that he fully assents thereto, and when in consequence thereof the testator or ancestor makes or omits to make a will or such particular disposition of his property in his lifetime as will carry out his desire, a parol trust is created.

When it is sought to uphold such a trust, it must appear that the decedent relied upon the promise of the heir or devisee as an effective arrangement for the future disposition of his property.

The court is of opinion that the only inference that can properly be drawn from the testimony in this case, the only inference which a jury would be warranted in drawing, is that the decedent intended in her lifetime to make some disposition of her estate for her mother's benefit, and that she was prevented, not by her father's assent to her proposed disposition and her reliance upon that assent, but by her own sudden illness and death and consequent inability to carry out her purpose.   The presiding justice was warranted, therefore,

in withholding the question of the existence of a trust from the consideration of the jury.

The definition of fraud is a legal question, its existence is a question of fact.

To invalidate a voluntary conveyance, a fraudulent intent must be shown, and it is shown when it appears that a debtor makes a gift of such an amount, or under such circumstances, taking into account all existing conditions, as must necessarily hinder, delay or defraud his creditors. In such case, the donor intends to defraud, in legal contemplation, because he deliberately, intentionally does an act which does hinder, delay or defraud his creditors and which, as things are at the time, he must see, if he stops to think, will have that effect.

If at the time a voluntary conveyance is made, taking into consideration the value of the property transferred, the amount of the debtor's property left with which to satisfy his indebtedness in comparison with the amount of his indebtedness, the transfer must necessarily operate so as to hinder, delay or defraud creditors, then the conveyance is fraudulent and avoidable.

Whether a fraudulent conveyance as thus defined has been proved is a question of fact for the jury.

*Held;* that that question was not withdrawn from the consideration of the jury by the instructions complained of.

On motion and exceptions by claimant. Overruled.

Action by surety on a probate bond against a co-surety for contribution, begun by trustee process. The issue was between the plaintiff and the claimant, wife of the defendant.

The case appears in the opinion.

*L. C. Cornish and N. L. Bassett,* for plaintiff.

*H. M. Heath and C. L. Andrews,* for claimant.

SITTING: WISWELL, C. J., SAVAGE, FOGLER, POWERS, PEABODY, JJ.

SAVAGE, J. Action by surety on a probate bond against a co-surety for contribution. The action was commenced by trustee process.

The issue here is between the plaintiff and the wife of the defendant, who is the claimant of the funds in the hands of the several trustees. The funds sought to be held by the trustee process are, in part, certain deposits in bank made by the defendant in the name of his wife, and in part, one-half of the estate of Jennie M. Bolster, daughter of the defendant and claimant, who died intes-

tate and unmarried, leaving her father and her mother as her only heirs. As to the deposits in bank, it is conceded that they were gifts from the defendant to his wife, made after he had signed the probate bond in question. As to the half of the daughter's estate, there is no controversy but that the defendant, who was the administrator of the estate, as well as heir at law of one-half of the same, soon after his appointment as administrator, and several years after the signing of the bond, transferred to his wife, who was the other heir, not only her distributive share of the estate, but likewise his own. The plaintiff claims that this transfer by the defendant of his own share was a voluntary conveyance, a gift. The claimant, on the other hand, maintains that her husband took no beneficial interest in the daughter's estate, as heir or distributee, but that what would otherwise have been his share descended to him charged with a parol trust for the benefit of the claimant, a trust created by the daughter in her lifetime; and hence that in transferring the share in the daughter's estate to the claimant, the defendant was making no gift, but was simply executing a valid trust, and that the defendant had no interest whatever in his daughter's estate which was available for creditors.

The plaintiff, in legal contemplation, became the creditor of the defendant at the time he signed the bond as co-surety with the latter. *Howe* v. *Ward*, 4 Maine, 195; *Thomson* v. *Thomson*, 19 Maine, 244; *Danforth* v. *Robinson*, 80 Maine, 466. And, as such creditor, he now seeks to avoid the foregoing gifts and transfers made by the defendant to his wife as being fraudulent as to creditors.

The jury under instructions to which exceptions were taken, and which we must consider, rendered special verdicts to the effect that all of these gifts and transfers were made with the intent on the part of the defendant to hinder, delay or defraud his creditors. The claimant filed a motion to set aside these verdicts, but that motion is not pressed. In fact, we understand the learned counsel for the claimant, in argument, to concede that if the instructions to the jury were correct, there was sufficient evidence to warrant the verdict.

There is, however, a preliminary exception to be discussed and determined before we come to a consideration of the instructions excepted to relating to the fraudulent character, or otherwise, of the gifts and transfers. The claimant, insisting that the defendant's share in the daughter's estate came to him charged with a trust, and that thereby the entire beneficial interest belonged to the claimant, complains that the instructions given to the jury entirely removed from their consideration the question whether there was in fact a trust, or no. We think that this complaint is well grounded, and that the exceptions upon this point must be sustained, if there was any evidence, or legitimate inferences from the evidence, that tended to support the claimant's contention as to the fact of a trust. *Nugent* v. *Boston, Concord & Montreal R. R.* 80 Maine, 62. This contention was material, for if there was a valid trust, and the defendant took no beneficial interest in his daughter's estate, it needs no argument to show that the transfer of the naked interest held in trust for his wife violated no rights of his creditors and was not fraudulent as against them. On the other hand, if there was no evidence from which a jury would be warranted in finding that a trust had been created, then the instructions complained of on this point become immaterial, and it will be unnecessary to discuss their correctness as abstract propositions of law.

It is urged by the learned counsel for the plaintiff, that inasmuch as the evidence was undisputed whether a trust had been created was a question of legal construction for the court. This is not so, necessarily. Although the evidence was undisputed, yet if different legitimate inferences might be drawn from the evidence, it presented a question of fact for the jury. If there were any warrantable inferences to be drawn from the evidence, tending to support the contention of the claimant, the question should have been submitted to the jury. *Elwell* v. *Hacker*, 86 Maine, 416. With these rules in mind, we will now consider this question.

The daughter died October 1, 1895. Less than ten days before her death, the talk occurred which it is claimed created a parol trust. The daughter had previously received an invitation from a

lady friend to accompany her across the ocean, the latter part of January, 1896. The father and mother testified that they were in apprehension of the dangers attending such a trip, owing to the inclement season of the year when she proposed to go, and the countries she was intending to visit, and that they cautioned her to consider the question seriously before she accepted the invitation. The testimony is to the effect that after considering the matter further two or three days, the daughter informed her parents that she had concluded to accept the invitation and go. Thereupon ensued the following conversation, as given in the version of the defendant, her father: "After she had said that, her mother says, 'Jennie, what do you want done with your things in case you do not return?' Her reply was, 'Mother, if you outlive me, everything I possess I give to you, and will so state it in writing before I go away.'"

Ques. "Did she say anything to you (the defendant) in regard to carrying out her wishes?"

Ans. "She remarked to me that she wanted me to see that her wishes were complied with."

Ques. "What reply, if any, did you make to her at this time?"

Ans. "I told her everything should be done as she wished it."

The claimant's version, more particular than her husband's, but we think not essentially different, is as follows: "She finally did decide to go, and I told her I thought there was so many uncertainties, a great many vessels I had read of had been detained; and in case anything like that happened to her, what would she want done. She said that in case anything like that happened, she says, 'more than half of it is already yours, *and before I leave, I will give you the whole,* and I will have it done in writing.' She said she would have plenty of time; she wasn't going until January, and she would attend to it. But she was taken sick within, well, in less than two weeks, and she didn't have any consciousness; she was taken unconscious, *so there was nothing done about it.*"

Ques. "Was there anything said to your husband by her at that time?"

Ans. "Yes; she told him to see to it that it was done as she wished. She didn't think it worth while for girls to try to help men, as she called it; she expressed it that way to him ; she wanted him to see to it that I had it, that it was given to me."

Ques. "What answer, if any, did he make ?"

Ans. "He said he would do it; he would see that it was done."

At the time that conversation was had, the daughter was in her usual good health, and was at work in her usual employment. Two or three days before her death, she was taken suddenly ill and was unconscious all of the time until her death. The claimant strongly urges that by the agreement testified to on the part of the defendant, a parol trust was created in his share by inheritance in his daughter's estate, in the event of her death. This the plaintiff denies.

The subject of parol trusts of this character has recently been carefully and exhaustively considered by this court in *Gilpatrick* v. *Glidden*, 81 Maine, 137, and *Grant* v. *Bradstreet*, 87 Maine, 583, and neither the principles upon which they are based, nor the essentials requisite to establish them, need much further analysis at this time. Such trusts, if established by clear and indubitable evidence, will be enforced by this court.

In the opinion in *Gilpatrick* v. *Glidden*, VIRGIN, J., seems to hold that it is essential to the upholding of such a trust that the testator or ancestor make known to the devisee or heir his desire that the property shall be disposed of in a particular manner, and that he relies upon the latter to carry his desire into effect, that the latter uses words or does acts calculated to cause, and which he knows do in fact cause, the testator or ancestor to believe that he fully assents thereto, and that in consequence thereof the testator or ancestor makes or omits to make a will, or such particular disposition of his property in his lifetime as will carry out his desire. It is urged, however, by the learned counsel for the claimant that the case of *Grant* v. *Bradstreet*, supra, is authority for a modification, to some extent, of the essentials as laid down in *Gilpatrick* v. *Glidden*, and that a trust may be supported where the heir expressly assented to wish of the decedent, even though it did not appear that thereby

the latter was led to omit making a will or other disposition of his property to carry out his purpose.   We think there is no essential distinction between the rule stated-in *Gilpatrick* v. *Glidden*, and the one applied in *Grant* v. *Bradstreet*, for although in the latter case the testimony made no express reference to a will, it was clearly inferrible, under the particular circumstances of that case, that the decedent, then upon his death bed, and solemnly attempting to make provision for certain persons, in the event of his expected decease, relied upon the promise of the heir, and so omitted to make other disposition of his property.   In fact, the inference was almost irresistible.

But without further discussion of this question, there is one principle which runs through all the cases, and which, in our view of this case, must be decisive here.   It must always appear that the decedent *relied upon* the promise of the heir or devisee as an effective arrangement for the future disposition of his property. This principle is fundamental and universal.   Such a trust as this is claimed to be has its origin in fraud.   It is forced, if necessary, upon the conscience of the party to prevent the accomplishment of a fraudulent result.   It is constructed to compel the disponee to do with the estate coming to him as he has induced his ancestor or testator to believe that he will do.   It is upheld when and only when it would be unconscientious for the disponee to retain the estate to his own benefit.   It exists only because the decedent relied upon the promise of the heir.   If the decedent did not rely upon the promise, there is no fraud, and the trust fails.   It is not a fraud not to keep a promise that was not relied upon.

Now, considering the testimony, it seems clear to us, not only that the daughter did not rely upon her father's promise as an effective disposition of her estate, but that the only inference that can properly be drawn, and which a jury would be warranted in drawing, from the testimony of the claimant herself is that the daughter intended, before leaving for Europe, to make some disposition of her estate for her mother's benefit, perhaps by will, and that she was prevented, not by the assent of her father to the proposition, and her reliance upon it, but by her own sudden illness,

and consequent inability to carry out her purpose. Such it seems to us is clearly the only inference to be drawn from the claimant's own testimony; and such seems to have been the inference in the claimant's mind when she testified "she was taken unconscious, *so* there was nothing done about it." All else is mere guess-work, and that cannot be substituted for evidence or inference. An inference is the conclusion drawn by reason from premises established by proof. In a sense, it is the thing proved. Guess-work is not. We conclude then, that as the evidence, properly considered, does not have a tendency to establish a trust, the exception upon this branch of the cause should be overruled.

We now recur to the instructions upon the subject of fraudulent voluntary conveyances. Upon examination, we think they were correct in principle and appropriate in application. They follow the doctrine laid down in *Gardiner Savings Institution* v. *Emerson*, 91 Maine, 535, the latest decision on the subject in this state. To that doctrine we adhere. The ruling in substance was that if the defendant heedless and unmindful of his creditors, gave away property "under such circumstances and to such an amount, that *looking at it at the time as the thing then was*," it must have been apparent that his creditors would be hindered, delayed or defrauded, the transaction would be void. And this on the ground that a man is always presumed to intend the necessary results of what he does. This maxim as applied to this case is criticised by counsel, but no other rule would be safe or could be tenable. It cannot be disregarded. If the necessary results of the gift were fraudulent, considered in the light of circumstances as they existed at the time of the gift, then in law the giver's intent was fraudulent. Nor does this statement of the doctrine impugn in any degree the doctrine that fraud is always a fact to be proved, and not a result to be assumed. The definition of fraud is a legal question. Its existence is a question of fact. To invalidate a voluntary conveyance, a fraudulent intent must be shown, and.we hold that it is shown when it appears that a debtor makes a gift of such an amount or under such circumstances, taking into account all existing conditions, as must necessarily hinder, delay or defraud his creditors. In such

case, the donor intends to defraud, in legal contemplation, because he deliberately, intentionally does an act which does hinder, delay or defraud his creditors, and which, as things are at the time, he must see, if he stops to think, will have that effect.

It should be observed that by this rule, not every voluntary conveyance, or gift by a debtor, is fraudulent as to pre-existing creditors, even if subsequently, by reason of a change of conditions, it does, in fact, operate to hinder, delay or defraud creditors. The question is one of fact, depending upon the existing circumstances and conditions at the time of the alleged fraudulent conveyance. If at that time, taking into consideration the value of the property transferred, the amount of the debtor's property left with which to · satisfy his indebtedness in comparison with the amount of that indebtedness, the transfer must necessarily operate so as to hinder, delay or defraud creditors, then the conveyance is fraudulent, and avoidable. Whether a fraudulent conveyance as thus defined has been proved is for the jury, and that question was not withdrawn from the consideration of the jury by the instructions complained of.

The rule was appropriately applied in this case. The defendant, having no regard to the rights or even existence of his creditors, was apparently in the habit for years of giving all of his net income to his wife, the claimant. He must have known while he was doing this, if he gave the matter any consideration, that he was hindering, delaying, or defrauding his creditors. It was his duty to give them some thought.

*Motion and exceptions overruled.*