26106. MORSE, guardian, *v.* CALDWELL, next friend, etc.

806

DECIDED MAY 22, 1937.

*Abram Levy,* for plaintiff in error.

*John F. Hardin, Clement E. Dunbar,* contra.

SUTTON, J. 1. The status of the ward in the present instance, an adult war veteran, is somewhat novel. Though the record does not disclose that he is non compos mentis, his property, to the extent of certain compensation or benefits received from the Federal Government, is controlled by a guardian. That appointment was made in pursuance of the act of 1925 (Ga. L. 1925, p. 270), as amended by the act of 1929 (Ga. L. 1929, p. 248), codified as chapter 49-8 in the present Code, which provides: "Whenever, pursuant to any law of the United States or regulation of the bureau, the director requires, prior to payment of benefits, that a guardian shall be appointed for a ward, such appointment shall be made in the manner hereinafter provided." § 49-802. And "Where a petition shall be filed for the appointment of a guardian of a mentally incompetent ward, a certificate of the director of the bureau or his authorized representative, setting forth the fact that such person has been rated incompetent by the bureau on examination in accordance with the laws and regulations governing such

bureau, and that the appointment of a guardian is a condition precedent to the payment of any moneys due such person by the bureau, shall be prima facie evidence of the necessity for such appointment, and the ordinaries of the several counties are hereby authorized to appoint guardians without a trial, as in section 49-604, for any incompetent ward entitled to any benefits which may be payable to such incompetent by the bureau or its successor." § 49-803. What definition of "incompetent" is applied by the veterans' administration, in determining whether or not the condition of a hospital patient requires that a guardian be appointed to receive and disburse for him such benefits as he may be entitled to, is not shown by the record. But upon the issuance of the certificate by the director or his authorized representative, "setting forth the fact that such person has been rated incompetent," etc., the court of ordinary may, upon a petition filed, appoint a guardian to handle the benefits due such person by the Federal Government. Except as to the relationship thus created for the special purpose named, it does not follow that the ward is not sui juris, and, with respect to his other property and purposes, entitled to assert for himself his full legal rights in and out of court.

The above analysis is set out as an approach to the question whether or not the appeal and affidavit filed under the joint oaths of the ward and his next friend in the present case are subject to the objections urged by the plaintiff in error. The Code, § 6-203, provides: "When any party, plaintiff or defendant, in any suit at law or proceeding in the court of ordinary, shall be unable to pay costs and give security as hereinbefore required, if such party shall make and file an affidavit in writing that he is advised and believes that he has good cause of appeal, and that owing to his poverty he is unable to pay the costs or give the security required by law in cases of appeal, such party may enter an appeal without the payment of costs or giving security, as the case may be, as hereinbefore required." The affidavit as originally filed set forth the requisite averments on the part of the ward. Being sworn to by him personally, it was sufficient to support the appeal, if he was in law competent to make such affidavit, notwithstanding any defect or deficiency in the averments made by his next friend in the same affidavit. With respect to this particular ward, the tes-

timony of the guardian's attorney in·fact is that an unsuccessful attempt had been made to have him adjudicated insane. In the hearing he participated as counsel. He does not claim that the ward is insane. He testifies that ordinarily he is "a fine fellow and smart." In the lunacy hearing he introduced the available evidence, after being requested to act by the ordinary, though he did not initiate the proceeding. In the absence of any evidence in the record that the ward has since become non compos mentis, it must be presumed that his condition at the time of the adjudication still continues, and that, being an adult and sane, he was entitled to make the affidavit. In *Formby* v. *Wood,* 19 *Ga.* 581, upon the petition of the defendant Hunt representing himself as a lunatic, William Wood was appointed his guardian ad litem. Hunt personally entered an appeal from a judgment rendered in favor of the complainant, the pauper's affidavit being sworn to by himself. A motion was made to dismiss the appeal on the ground that no appeal could be made except by the guardian ad litem who had been appointed to defend for the defendant lunatic. The motion to dismiss was overruled, and the Supreme Court in affirming the judgment held that if the appeal affidavit of Hunt was made during a lucid interval his act was valid, and of course, the prima facie presumption was that it was so made. The evidence in the instant case shows the ward to be an epileptic. "'Epilepsy' is a medical term used to designate a disease of the brain, which occurs in paroxysms with uncertain intervals between them. The disease is in the brain, and is generally organic; but it may be functional and symptomatic of irritations in other parts of the body. Epilepsy is not to be regarded as a form of insanity, in the sense that a person thus afflicted can be said to be permanently insane; for there may be little or no aberration in the intervals between the attacks." 32 C. J. 610, § 64. We do not think it could be reasonably contended that an epileptic, when not in the throes of an attack, is less capacitated than a lunatic in a lucid interval. Under the ruling in the *Formby* case, supra, it must be held that prima facie the ward was competent to sign and make oath to the appeal and affidavit, and that consequently by his act the appeal was valid.

It is contended by the plaintiff in error that the affidavit should have been made by the next friend, and that her allegations should

go, not as to the inability of the ward to pay the costs or give security, but as to her own inability to do so. In support of such contention we are cited to one or two cases involving an infant ward, where it was said that the averments must be as to the representative's inability. The present case is distinguishable. The ward here is not an infant, and his incapacity exists only as to his right personally to receive and disburse the funds which he receives from the Federal Government. He is not, under any law of Georgia, to be deemed incompetent, in the state of the record, to manage any other fund or estate of his own. His situation is one in which this State, co-operating with the Federal Government for the benefit of war veterans, permits the appointment of the guardian for a special purpose, without making any adjudication as to the ward's competency or incompetency otherwise to assert his legal rights in propria persona. We see no reason why the court might not assess costs against such a ward in the first instance, to be paid out of funds other than those derived from the Federal Government as compensation or other benefit; and, if so, why should an affidavit from the next friend be required in addition to that of the adult ward? Assuming, but not conceding, that it was incumbent on the next friend to aver her own inability because of her own poverty to pay the costs or give the requisite security, the affidavit when tested by her act was sufficient. As originally worded the affidavit did not allege such inability on her part. Subsequently attempts were made to amend under the authority of the Code, § 6-109, which provides: "Where material words are omitted by accident or mistake in an affidavit to appeal in forma pauperis, such omission is amendable." In the first amendment she avers that if material words were omitted by mistake she swears that, owing to her poverty, she is unable to pay the costs or give the security required by law. Because of the subsequent oaths of her counsel it may be assumed that the appeal and affidavit were originally prepared by them, and that she, in the amendment signed by her, means to say that as a layman, not knowing whether or not they omitted material words by mistake, she swears that, owing to her poverty, she is unable to pay the costs or give the security required by law. No averment having been made that the material words were omitted by mistake, the affidavit after her amendment was still incomplete; but

thereafter her counsel made oath that the material words added by her amendment were omitted by them by mistake in drawing the appeal and affidavit in the first instance. We think the court properly allowed such amendments. The plaintiff in error contends that the affidavit could not be amended on the oath of counsel. In *Elder* v. *Whitehead*, 25 *Ga.* 262, it was held that an attorney was not authorized to make an affidavit that owing to the defendant's poverty, as deponent believed, the defendant was unable to pay the costs, etc. In that case, however, the attorney was attempting to swear to something upon which only the conscience of the defendant could be put, viz., the reason why the defendant could not pay the costs or give the security required by law. In *Selma, Rome & Dalton R. Co.* v. *Tyson*, 48 *Ga.* 351, an affidavit in forma pauperis in connection with a certiorari was signed in the name of the client by his attorney. Under the authority of *Elder* v. *Whitehead*, supra, the Supreme Court held that it was not permissible. In *Lester* v. *Haynes*, 80 *Ga.* 120 (5 S. E. 250), the affidavit of an agent of the appellant was not allowed. In those cases nothing was sworn to by the parties themselves.

In the leading case of *Hadden* v. *Larned*, 83 *Ga.* 636, 638 (10 S. E. 278), Chief Justice Bleckley well stated the impropriety of an agent swearing to the conscience of his principal: "The general rule as to all claimants is, that to obtain a hearing they must give bond and security. A special privilege granted by the act of 1870 to a particular class of claimants, to wit, the poor, is that they may be heard without bond and security, provided they will make a certain specified affidavit; that is, if they will undergo a search of their personal consciences as to their good faith, their advice and belief, their poverty and consequent inability to give bond and security, they may stand upon the same footing as other claimants who have given bond and security. By the terms of the statute it is not the bona fides, the belief, or the poverty of an agent that will suffice; but the bona fides, belief, and poverty of the claimant; and these must be sworn to positively, and not merely according to belief. How can an agent swear positively to the bona fides or belief of his principal? These are moral conditions—conditions of mind and consciousness which can not be known beyond the limits of the consciousness under examination. This beneficent statute would be open to great abuse were it

within the power of any and every claimant to decline swearing to his own mental state, and commit the exposition thereof to his agent, who might or might not be conscientious. The agent would be competent to swear to his own condition of mind positively, but that is not the thing on which the privilege granted by the statute depends. It is the condition of mind of the claimant; as to which the agent could have belief, but not certain knowledge. Thus the matter stands on principle." We find no decision holding that an attorney can make oath that the requisite averments in a pauper's affidavit were omitted by accident or mistake. From the cases above mentioned it is clear that an attorney can not make for his client a pauper's affidavit containing all of the necessary averments. Such an oath would include the averment that the client because of his poverty is unable to pay the costs or give the security required by law. The basis of the objection was ably presented by Chief Justice Bleckley in the *Hadden* case, supra. We think, however, the cases cited above are distinguishable from the present case, in that the averment of the attorneys comes from their own minds and consciences, and relates only to the fact that they had omitted by mistake certain language from the affidavit prepared for another to sign. In *Abernathy* v. *Mitchell*, 113 *Ga.* 127, 129 (38 S. E. 303), the attorney sought to amend by making affidavit that in the expression, "pay the costs and give the security," etc., the word "or" was omitted through inadvertence and mistake. The trial court refused to allow the amendment "unless affidavit was made stating that by accident or mistake the word 'and' was used instead of 'or.'" The Supreme Court said that the affidavit of appellant's counsel was wholly vain "when considered in connection with his refusal to swear that through accident and mistake the word 'and' was used instead of the word 'or.' His position was reduced to an absurdity, and the court below did not err in dismissing the appeal." The objection thus made to appear was that counsel was unwilling to swear that he did not *intend* to use the word "and" when he used it. A different case is presented where one desires to *add* language omitted by mistake, rather than to eliminate what was intentionally placed in an affidavit by the person seeking to amend and who is unwilling to swear that he did not intend to do what he did do. In the *Abernathy* case there is a possible inference that the Supreme

Court thought that had the attorney been willing to swear that he did not *intend* to use the word "and" for the word "or," he should have been permitted to amend by eliminating the word "and" and substituting therefor the word "or," as having been omitted by accident or mistake. In the present case counsel could conceivably swear honestly that the material words were omitted by their own mistake. When to that is added the oath of the next friend that because of her poverty she is unable to pay the costs or give the security required by law, we think that the necessary averments are completed and are such as could be made by the affiants out of their own respective minds and consciences. The failure of the appellant to have the necessary amendments made in the court of ordinary is not fatal. On appeal to the superior court the case is to be treated de novo, with the right to amend all pleadings. In *Sample* v. *Carey,* 19 *Ga.* 573, *Holsenback* v. *Martin,* 28 *Ga.* 73, and *Bank of the Empire State* v. *Booton,* 52 *Ga.* 654, it was shown that the right to amend should be liberally granted.

The following objections to the appeal and affidavit not dealt with above were also without merit: (a) "The appeal on its face shows it to be from the 'judgment of the ordinary,' and a judgment of the ordinary can be reviewed only by a writ of certiorari." This case was first tried by the court of ordinary under the jurisdiction conferred by the Code, § 24-1901, which provides: "Courts of ordinary have authority to exercise original, exclusive, and general jurisdiction of the following subject-matters: . . The appointment and removal of guardians of minors and persons of unsound mind." The words "court of ordinary" and "ordinary" are often used interchangeably, but it is the act which determines whether the ordinary is proceeding as a court or in a ministerial capacity. *Comer* v. *Ross,* 100 *Ga.* 652 (28 S. E. 387). In the present instance the judgment was rendered by the court of ordinary, exercising the judicial function conferred by Code, § 24-1901. (b) "The appellant, Bartholomew Burchett, not being a party to the proceeding before the ordinary, is a stranger to the case, and has no appealable right." In a proceeding brought by a next friend or guardian on behalf of another, the suit is essentially that of the one for whom the suit is brought. *Phillips* v. *Taber,* 83 *Ga.* 565, 575 (10 S. E. 270); *Ellington* v.

*Beaver Dam Lumber Co.,* 93 *Ga.* 53, 55 (19 S. E. 21) ; *Vale Royal Mfg. Co.* v. *Bradley,* 8 *Ga. App.* 483 (70 S. E. 36) ; *Young* v. *W. & A. R. Co.,* 43 *Ga. App.* 257 (3) (158 S. E. 464) ; *Kite* v. *Brooks,* 51 *Ga. App.* 531, 535 (181 S. E. 107). The next friend or guardian is only the representative of such person, and is an officer of the court. *Sharp* v. *Findley,* 59 *Ga.* 723, 729 ; *Lasseter* v. *Simpson,* 78 *Ga.* 61 (3 S. E. 243) ; *Gentle* v. *Georgia Power Co.,* 179 *Ga.* 853, 854 (177 S. E. 690) ; *Parrish* v. *Rigell,* 183 *Ga.* 218, 223 (188 S. E. 15). (c) "The affidavit of Bartholomew Burchett, an incompetent under guardianship, is of no force and effect, because of want of showing that the said Bartholomew Burchett was competent to make such an affidavit." There is nothing in the record showing Burchett non compos mentis, although designated in the petition as an "incompetent." That term may include others than those incapable, because of insanity, to make an affidavit. In the absence of a showing of total mental incapacity, being only an epileptic, and the record showing that he had previously been adjudicated sane in a lunacy hearing in the same court of ordinary, it will be presumed that he was competent to make the affidavit. (d) "The affidavit subscribed to by the said Bartholomew Burchett, and the said Mrs. Maggie Caldwell, is before one J. H. DeLand, Notary Public, without any evidence that the said Notary Public has authority to administer oath in Richmond County, Georgia." An amendment was subsequently allowed, adding the words "State of Georgia at Large" after the words "Notary Public." The court did not err in overruling the motion to dismiss the appeal, in overruling the objections to the amendments, and in overruling the motion to dismiss the appeal as amended.

■ Was the petition good as against the general demurrer? It alleged that since the guardian's appointment she had been for four years a non-resident, and that because of such non-residence and inability of the ward to get in prompt and more frequent personal touch with her, and to discuss and talk with her about his matters, interests, money, and estate, such a condition produces a harmful and hurtful effect and influence on the physical and temperamental welfare of the ward, and that his interest would be better subserved by the removal of the present guardian; that she is regularly and continuously represented in her guardianship by

her attorney in fact and attorney at law, Abram Levy, a member of the bar and a resident of Richmond County, Georgia. We think that the petition set out sufficient grounds for the removal of the guardian, and was good against the general demurrer. However efficiently the property might be managed in a material sense, if a harmful influence is being exerted on the ward it is better that a change be made. The Code, § 49-232, provides: "If the ordinary shall know, or shall be informed, that any guardian . . for any cause is unfit for the trust, the ordinary shall cite such guardian to answer to such charge at some regular term of the court, when, upon investigation of his action, the ordinary may, in his discretion, revoke his letters, or pass such other order as in his judgment is expedient under the circumstances of each case." The removal is not sought on the ground that the property is being mismanaged, but the petition invokes the discretion of the ordinary under that part of the statute which authorizes removal when the guardian is "for any cause" unfit for the trust. "'Unfit' in general means unsuitable, incompetent, or not adapted for a particular use or service." Richards v. Forrest (Mass.), 180 N. E. 508, 510. In Funk & Wagnalls Dictionary it is defined as "having no fitness, not adapted or qualified for a certain purpose; unsuitability." As stated in Bruce v. Fogarty, 53 Ga. App. 443 (186 S. E. 463), the word "unfit," as used in the statute, is not limited to physical, mental, or moral conditions. In Johnson v. Kelly, 44 Ga. 485, 486, it was said that the Code lays down no limitations on the scope of the inquiry as to the fitness and capacity of a guardian. The power of appointment given the ordinary is for the benefit of the ward, not of the guardian. Watson v. Warnock, 31 Ga. 716, 718; Chalker v. Thornton, 31 Ga. App. 791 (122 S. E. 244); Griffin v. Harmon, 35 Ga. App. 40 (132 S. E. 108). Conversely, on the question of removal, the interest of the ward, rather than that of the guardian, must govern. If, as alleged in the petition, the present guardianship is being exercised with the results set out, the guardian ought to be removed and a more accessible and benevolent one appointed. The court did not err in overruling the general demurrer. The special demurrers, not being argued or insisted on in the brief of counsel for the plaintiff in error, are treated as abandoned.

■ The evidence introduced on the hearing was sufficient to

authorize the jury to find in favor of the removal of the guardian. It was shown that she is absent in the State of California, and, though entirely satisfactory while residing near the ward and affording him an opportunity as an adult person to discuss with her his property affairs, is now practically exercising the guardianship, except as to signing checks, etc., through a permanent attorney in fact; that the attorney is objectionable to the ward, and, according to the testimony of the ward, wrongfully, and sometimes with profanity, accuses him of misconduct; that the ward normally conducts himself properly, but after visiting the office of the attorney, or being sought out by him, is often found by friends to be in a high state of excitement, "a nervous wreck," as described by one witness, and that much patience and solicitude are necessary to compose him. Doctors connected with the hospital where he is a patient testified that he had a "fixation," a decided aversion to the attorney, the representative of the guardian, a sort of obsession in talking about him. While uncertain whether a change of guardianship would bring about a different attitude on the part of the ward, they were generally of the opinion that the present situation is not good for him. One doctor testified: "As to whether, when an epileptic has a fixation, the removal of that, if possible, would be better for the epileptic, I say, possibly it would ease his mind." Certainly it is important that his mind be eased. In view of the fact that his guardian was able fully to satisfy him and promote his welfare in the handling of his property when present in Augusta, it can not be said that the particular aversion he holds towards her representative would be manifested towards a new guardian who would be able personally to deal with him in the handling of his property. If such should be the case, and by whim or caprice he should seek another guardian in the future, that is a matter which the ordinary in his discretion can control. The attorney testified that the ward's fixation and animosity resulted from a refusal to sign him out of the hospital against medical advice, and that towards others he had intermittent fixations, but he also testified: "When he is in good condition he is all right. He is a fine fellow and smart." He testified that an attempt had been made to have the ward adjudicated insane; that at the request of the court, after a petition had been filed by another, he summoned witnesses and brought out their tes-

timony; that the attempt failed; that he received a fee of $75; that Mrs. Morse, the present guardian, is guardian for two incompetents in the hospital in Augusta; that he is guardian for five, the limited number allowed by the law for one guardian; that he represents two of Mrs. Morse's wards as attorney for her; and that he is attorney at law for forty other patients in the hospital. As stated in the discussion in the second division of this opinion, the law does not limit the scope of the inquiry into the fitness or suitability of a guardian. Although the precise point was not up for decision, the Supreme Court in *Watson* v. *Warnock,* supra, recognized that the qualifications of a guardian as to fitness and suitability are open to investigation even in the case of a guardian of the property of a ward. We think the evidence amply authorized the jury to find that the present guardian, by reason of the manner in which she exercises her guardianship, is not fit and suitable for the trust and should be removed.

■ Error is assigned on the following charge of the court: "The important question for you to decide in the case is whether or not it is for the good of the person under guardianship, that is the ward, for a change to be made in his guardian. This section of the Code read to you sets out many things for which a guardian may be removed, but none of those are charged, and then they give this 'monument to the unknown god,' which says for any cause is unfit for the trust you may remove him, and you are to say from this evidence whether or not she is unfit for the trust." When taken in connection with other portions of the instructions to the jury the charge was not error. As hereinbefore shown, a guardianship is for the benefit of the ward, not of the guardian, and the law lays down no limitation on the scope of the inquiry into the fitness of the guardian. The court properly instructed the jury as to the ground on which removal was sought, and informed the jury that they should base their verdict on the preponderance of the evidence.

Error is also assigned on the refusal of the court to charge: "I charge you, gentlemen of the jury, that if the ward shall be above the age of fourteen years before a guardian is appointed, he shall have the privilege of selecting a guardian, and if such selection be judicious, the ordinary and the Court of Appeals shall appoint him, and I charge you further that the ward having once

exercised this privilege can not do so again except upon cause shown for the removal of the first selection." The Court of Appeals has no right to make an appointment of a guardian, and the charge requested was otherwise not pertinent. The petition did not claim any right in the ward to make the selection of the new guardian, but sought removal of the present guardian on the ground of unfitness, with a view of making application for appointment by the ordinary of a new guardian. The court properly instructed the jury that they must find from a preponderance of the evidence whether or not the present guardian was unfit for the trust and should be removed. Accordingly, it was not necessary to give the requested charge and the refusal of the court to do so was not error.

Error is also assigned on the refusal of the court to charge: "I charge you, gentlemen of the jury, that if you find from the evidence that a hostility exists between the ward and his guardian, you will look further and ascertain if that hostility was occasioned by the misbehavior of the ward, and if so occasioned it is not a sufficient ground for the removal of the guardian, and you will find against the removal of the guardian." There was no evidence of any hostility on the part of the ward towards the guardian. The hostility, if any, was solely towards the attorney of the absent guardian, and, the requested charge being inappropriate, the court did not err in refusing to give it to the jury.

No ground of the motion for new trial shows error, and the court did not err in overruling the motion.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*