In the Matter of the **ESTATE OF Gordon C. ROOSA, Deceased.**

**Neola WHIPPLE, Marjorie M. Costa, Howard A. Roosa, and the Estate of the Reverend Ray Roosa, Appellants (Petitioners/Contestants),**

v.

**NORTHERN WYOMING COMMUNITY COLLEGE FOUNDATION OF SHERIDAN, Wyoming, Appellee (Respondent/Intervenor),**

**First Interstate Bank of Sheridan, formerly Bank of Commerce of Sheridan, Appellee (Respondent/Executor).**

No. 87–152.

Supreme Court of Wyoming.

April 14, 1988.

Jeffrey J. Gonda, Lonabaugh & Riggs, Sheridan, for appellants.

Robert E. Holstedt, Holstedt & Holstedt and Bruce P. Badley and Clay B. Jenkins, Badley & Rasmussen, P.C., Sheridan, for appellees.

Before THOMAS, CARDINE, URBIGKIT and MACY, JJ., and GUTHRIE, J., Retired.

THOMAS, Justice.

This case presents two questions relating to testamentary capacity. The first involves a motion for summary judgment, by proponents of a will in response to a contest which raised the issue of testamentary capacity, and is concerned with the nature of the information which must be presented to support a motion for summary judgment and, conversely, by the party opposing the motion to structure a genuine issue of material fact. The second question relates to whether a presumption of lack of testamen-tary capacity attaches to a guardianship created under the Uniform Veterans' Guardianship Act, §§ 3–6–101 through 3–6–119, W.S.1977 (May 1985 Replacement). The district court held that the will contest-ants failed to demonstrate appropriately a genuine issue of material fact as to testa-mentary capacity and afforded no efficacy to the veteran's guardianship. Summary judgment was ordered in favor of the pro-ponents of the will. We agree with the ruling of the district court in this instance and affirm the summary judgment which was entered.

In attacking the summary judgment in this appeal, the will contestants, who are nieces and nephews of the testator, set forth the following issues:

"1. Whether the trial court erred in granting summary judgment to respon-dents when there existed substantial questions of material fact?

"2. Whether the affidavits filed in oppo-sition to respondents' motion for summa-ry judgment raised questions of material fact?

"3. Whether the guardianship imposed on testator prior to his execution of the will raised a presumption of testamenta-ry incapacity?

"4. Whether a presumption of testa-mentary incapacity raises a question of material fact sufficient to prevent the entry of summary judgment?"

The appellees, Northern Wyoming Commu-nity College Foundation of Sheridan, Wyo-ming (the beneficiary under the will), and First Interstate Bank of Sheridan (the exec-utor of the will), urged that the issues to be resolved are:

"1. Whether there are any issues of material fact?

"2. Whether the appointment of a guardian under the Uniform Veterans' Guardianship Act raises a presumption that the ward lacks testamentary capaci-ty?"

After the death of Gordon C. Roosa (Roo-sa), this proceeding was initiated to probate his Last Will and Testament. The will was contested by the appellants who asserted lack of testamentary capacity at the time

the will was executed. Subsequent to the initiation of the will contest, Northern Wyoming Community College Foundation of Sheridan, Wyoming was allowed to intervene in order to defend the will. Following additional pleading by the parties and the pursuit of discovery, a Motion for Summary Judgment was filed by the executor and the beneficiary, supported by affidavits of two attorneys (one who had prepared the Last Will and Testament of Gordon C. Roosa and served as a witness, and the other who only witnessed the will); a certified copy of the will; and depositions of a bank employee who had worked with the administration of the guardianship of Roosa, one of the attorneys who witnessed the will, and two of the contestants. The contestants resisted the Motion for Summary Judgment and supported their resistance with the affidavits of two people who had known Roosa for some 13 years prior to his death, which period of time encompassed the date of execution of his Last Will and Testament. The probate court granted the Motion for Summary Judgment, and this appeal is taken from that order.

Roosa was a veteran of the Armed Forces of the United States of America, apparently of World War I, although the record is not clear on this point. It would appear that he would have been in his late twenties or early thirties at the time of World War I because he was ninety-eight or ninety-nine when he died in 1985. He was separated from his brothers and sisters at an orphanage early in life. Roosa and his siblings were raised in separate families and, over the years, he maintained only minimal contact with any brothers and sisters. Probably he had not seen any of them since the 1940's, and all predeceased him. None of the appellants ever had met Roosa.

From approximately 1963 until March of 1983 (about a year and 9 months prior to his death), Roosa had lived in a trailer on property belonging to a firm known as Barker Brothers, Inc. In 1974, he became a ward under a guardianship created pursuant to the Uniform Veterans' Guardianship Act, §§ 3–6–101 through 3–6–119, W.S.1977 (May 1985 Replacement). He ex-ecuted his Last Will and Testament at Sheridan, Wyoming on March 2, 1977. The Northern Wyoming Community College Foundation of Sheridan, Wyoming was the sole beneficiary under that Last Will and Testament. Roosa's estate was composed essentially of accumulated Veterans' Administration benefits which had been subject to the guardianship. If the appellants' challenge to the will on the basis of lack of testamentary capacity should succeed, then they, as his statutory heirs, would receive the estate.

In order to properly enter a summary judgment, the district court must find that there exists no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law. E.g., *Schepps v. Howe*, Wyo., 665 P.2d 504 (1983); *Weaver v. Blue Cross–Blue Shield of Wyoming*, Wyo., 609 P.2d 984 (1980); *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975), and the cases cited in these authorities. Materiality of a fact depends upon it having some legal significance so that it establishes or refutes some essential element of a cause of action or defense asserted by one of the parties. *Schepps v. Howe*, supra; *Johnson v. Soulis*, supra. The burden is assigned to the moving party to demonstrate clearly the absence of any genuine issue of material fact. *Weaver v. Blue Cross–Blue Shield of Wyoming*, supra. If the motion for summary judgment is supported properly by affidavits, as supplemented by depositions, answers to interrogatories, or further affidavits, the party opposing the motion cannot rely upon allegations or denials in his pleading, but he must, by affidavit or otherwise, demonstrate facts which pose a genuine issue for trial. Rule 56(e), W.R.C.P.; *Schepps v. Howe*, supra. In reviewing a summary judgment, we examine the entire record in the light most favorable to the party who opposed the motion, and all favorable inferences which may be drawn from the material either supporting or opposing the motion must be afforded to the party against whom judgment was entered. *O'Donnell v. City of Casper*, Wyo., 696 P.2d 1278 (1985); *Schepps v. Howe*, supra.

▪ In this case, the materiality of any facts is limited by the pertinent legal standard. The standard of testamentary capacity articulated in 1 Bowe–Parker, Page on Wills, § 12.21 at 606–608 (1960) has been adopted for Wyoming:

"' * * * Testator must have sufficient strength and clearness of mind and memory, to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them. He must have sufficient mind and memory to understand all of these facts, and to comprehend these elements in their relation to each other, and a charge, in negative form, that capacity is lacking if testator is not able to know all of these facts, is erroneous, since he lacks capacity if he is unable to understand any one of them. He must be able to appreciate the relation of these factors to one another, and to recollect the decision which he has formed.' " *In re Estate of Morton,* Wyo., 428 P.2d 725, 729 (1967).

There are three factors which must be considered in applying this standard. The testator must be able to comprehend:

" * * * (1) [T]he extent and nature of the estate, (2) the identity of the beneficiaries and their relationship, whether by blood or circumstances, to the testator, and (3) the nature of the testamentary act, that it is a disposition of property to take effect at death." 1 Bowe–Parker, Page on Wills, supra, § 12.21 at 608.

These elements of testamentary capacity must be present at the time the will is made. 1 Bowe–Parker, Page on Wills, supra, § 12.21 at 571.

▪ We also recognize a presumption of sanity and the possession of testamentary capacity. Wyoming embraced that general rule *in Matter of Faragher's Estate,* Wyo., 367 P.2d 972 (1962). This presumption of testamentary capacity arises upon proof of the due execution and attestation of the will. 79 Am.Jur.2d *Wills* §§ 106 and 107 (1975), and cases cited therein. The

effect of this presumption in a will contest is that the burden is assigned to the contestants to show by a preponderance of the evidence the claimed testamentary incapacity, and the only exception is if the prior incompetency of the testator has been established by proof or admission. *In re Estate of Morton,* supra.

▪ We examine then the factual information in this record in the light of the standard and the burden of proof. In support of the Motion for Summary Judgment, the appellees offered:

(1) the affidavit and deposition of Harlan Rasmussen, an attorney who represented First Interstate Bank of Sheridan in its capacity as guardian for the decedent, and who was an attesting witness to the Last Will and Testament;

(2) the affidavit of James N. Wolfe, the attorney who drafted the decedent's Last Will and Testament and who also was an attesting witness to the Last Will and Testament; and

(3) the deposition of Mary Lou Sare, a trust officer at First Interstate Bank of Sheridan who handled the guardianship of Gordon Roosa for the Veterans' Administration.

In his affidavit, Harlan Rasmussen averred that, on the date of execution of the will, Roosa appeared lucid and well oriented. Testifying in his deposition, Mr. Rasmussen stated that, although he was unable to recall the exact conversation on the day the will was executed, he would not have witnessed the will without satisfying himself that it did express the intent of the testator. He further testified that, having represented the bank in connection with the guardianship, he had met with Roosa some ten to twenty-five times before the will was executed. Mr. Rasmussen's testimony was to the effect that Roosa knew how much money he had in the guardianship; wanted to do something with his money that would help people; and did not talk about his family, leaving the impression with Mr. Rasmussen that he had no family.

The other witness to the will, James Wolfe, Mr. Rasmussen's law partner at the time of the execution of the will, actually

prepared the will. In an affidavit, Mr. Wolfe stated that he discussed this will with Roosa, on several occasions, both before and after it was executed. Mr. Wolfe stated that Roosa did not indicate that he had any living relatives to whom he wished to leave his estate but that the discussions with respect to testamentary disposition revolved around various charitable and educational institutions, including Sheridan's college. Mr. Wolfe's affidavit ended with this statement:

"* * * Mr. Roosa executed the will in the presence of both myself and my law partner, Mr. Rasmussen, and in my opinion at the time understood that he was executing his last will and testament disposing of the money and other property which he might have at the time of his death in accordance with the will which he was signing."

By deposition, Mary Lou Sare testified that she saw Roosa regularly over a number of years. These meetings occurred because of her employment as the trust officer handling Roosa's guardianship. She stated that Roosa knew exactly how much money he had; and, frequently, he would ask where it had been invested and what its rate of return was. She testified that he came to the bank two or three times a month with these inquiries up until 1982. She also testified that on different occasions Roosa had spoken of Sheridan College with approval.

Singularly or collectively, the information submitted in support of the motion for summary judgment established a prima facie factual demonstration of testamentary capacity in accordance with the standard adopted for Wyoming. The information distinctly justified the validity of the presumption of testamentary capacity. In light of the requirements of Rule 56(e), W.R.C.P., the appellants could not have failed to respond.

In opposition to the evidentiary material supporting the summary judgment, the appellants filed the affidavits of Barbara Barker and Gabriel Barker, employees of Barker Brothers, Inc. These individuals were acquainted with Roosa much of the time during 1963 through 1983 when he resided in a trailer located on land owned by Barker Brothers, Inc. These affidavits essentially contained conclusions and opinions, such as: Roosa lived in a dream world; he did not operate in reality; he did not have a clear understanding of his business affairs; and he lacked capacity to sign a will. The affiants supported their conclusions by recitation of specific instances of eccentric or even delusional behavior on the part of Roosa. The incidents relied upon included such things as Roosa calling himself "Craig R." and "Major Craig R."; his statement of belief that he was a partner with Barker Brothers, Inc. in a number of large projects; his attempt to contribute large sums of money to those projects in 1978; his statement that he was working for the Attorney General of the United States; and his periodic billing to Barker Brothers, Inc. for "work" he believed he was doing for that firm. Roosa did putter around with various projects on Barker Brothers, Inc. property to "occupy Mr. Roosa's time and keep him happy," even though he was not on the payroll.

In her deposition, submitted by the appellees, Mary Lou Sare also related incidents of eccentric behavior. She said that Roosa had mentioned to her a connection with a car factory in Colorado. Occasionally, he made vague requests that she transfer his money to a Montana bank; he poured a package of sugar on her desk, complaining that it was not processed properly and discussing the fact that it should be reported to someone; and, on one occasion, he suggested that Ms. Sare might have to assist him to prevent aliens from coming across the border, this apparently in connection with his perceived duties as a guard for Barker Brothers, Inc.

With this record, the appellants urge the existence of a genuine issue of material fact as to the testamentary capacity of Roosa. A careful analysis of the record, however, demonstrates that there is no genuine issue of material fact. In light of the standard for testamentary capacity adopted in *In re Estate of Morton*, supra, the facts which are material for our pur-

poses are Roosa's comprehension of the extent and nature of his estate, the identity of the beneficiary and its relationship to Roosa and the disposition of his property which was to take effect at his death. The summary judgment materials produced by the executor and the beneficiary address these facts directly. The materials submitted by the appellants do not reach these factors. Although the events recited in the affidavits of Barbara Barker and Gabriel Barker encompass the date of execution of Roosa's Last Will and Testament, there is nothing which establishes that any of them occurred in close proximity to the date of execution. The facts recited do not serve to illustrate any miscomprehension by Roosa of the requisite factors for testamentary capacity. These materials reflect some unusual incidents, remote from the date of the execution of the will, but they do not directly refute the factual matters set forth in the materials filed by the executor and the beneficiary under the will. Those materials state facts reflecting that, on the date of the execution of his will, Roosa knew the extent of his estate and the identity of the object of his bounty, and he understood the effect of the execution of his Last Will and Testament.

The circumstances of this case cause us to revisit *Blackmore v. Davis Oil Company*, Wyo., 671 P.2d 334 (1983) (which was decided in reliance upon *Forbes Company, Inc. v. MacNeel*, Wyo., 382 P.2d 56 (1963)), and *Kobielusz v. Wilson*, Wyo., 701 P.2d 559 (1985). In the former case, we said that:

> " * * * [A]n inference which is contrary to direct testimony is insufficient to support a finding that a genuine issue of material fact exists * * *." *Blackmore v. Davis Oil Company*, supra, 671 P.2d at 337.

In *Kobielusz v. Wilson*, supra, 701 P.2d at 560–561, we recognized the quoted rule but went on to say:

> " * * * [T]hat determination usually depends upon the quality of evidence creating the inference and the direct testimony."

Later we adopted language as follows:

> " 'A reasonable inference is as truly evidence as the matter on which it is based, and is not a mere presumption or guess; appropriate inferences from proved facts are not a low order of evidence, but are just as valid as evidence as statements of eye-witnesses and are to be weighed by the jury along with the other evidence before it and may be strong enough to outweigh positive and direct oral statements. Whether or not they should be permitted to overcome positive and direct testimony depends, in every case, on the relative strength of the one or the other.' 32A C.J.S. *Evidence* § 1044." *Kobielusz v. Wilson*, supra, 701 P.2d at 562–563.

In these instances, we perhaps were painting with too broad a brush. We know that it is our duty to consider the record in the light most favorable to the appellants, who opposed the motion for summary judgment, and, in so doing, to give them the benefit of all favorable inferences. We have adopted the following statement:

> "Guess-work cannot be substituted for evidence or inference, for 'an inference is the conclusion drawn on reason from premises established by proof. In a sense, it is the thing proved. Guesswork is not.' *Whitehouse v. Bolster*, 95 Me. 458, 50 A. 240." *Wright v. Conway*, 34 Wyo. 1, 241 P. 369, *reh. denied* 34 Wyo. 42, 51, 242 P. 1107, 1110 (1925).

California, by succinct legislation, has captured the concept that is pertinent here:

> "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." Cal.Evidence Code § 600(b) (West 1966).

See also, e.g., *Cummins v. King and Sons*, Alaska, 453 P.2d 465 (1969); *Atchison, T. & S.F.R. Company v. Hicks*, 64 Ariz. 15, 165 P.2d 167 (1946); *Draper v. Louisville & N.R. Company*, 348 Mo. 886, 156 S.W.2d 626 (1941); *Peterson v. Betts*, 24 Wash.2d 376, 165 P.2d 95 (1946). A properly drawn inference, contrary to direct testimony, can serve to structure a genuine issue of material fact.

We turn then to an analysis of inferences which properly may be drawn from the

affidavits of Barbara Barker and Gabriel Barker. If the issue to be resolved were general incapacity, those affidavits might serve to create an inference of general incapacity. Their adequacy to overcome a presumption of sanity is open to question. *Wood v. Wood,* 25 Wyo. 26, 164 P. 844 (1917). A showing of general incapacity, however, would not meet the standard for lack of testamentary capacity established in *In re Estate of Morton,* supra. Furthermore, general incapacity is not the only inference that can be drawn from the Barker affidavits.

For example, one can infer from them that Roosa was an eccentric. A conclusion of eccentricity, though, does not foreclose the possession of testamentary capacity. The general rule is:

"* * * Eccentricity has no effect on testamentary capacity; * * *.

"The fact that the testator was filthy, forgetful, and eccentric, * * * believed in witchcraft, and had dogs eat at the same table with him, * * * or that testator thought that others were plotting against him and was afraid to go out in the dark, * * * does not establish lack of capacity." 1 Bowe–Parker, Page on Wills, supra, § 12.37 at 644–645.

In a similar vein, this court discussed the effects of aging, another inference which can be drawn from the Barker affidavits, and specifically referred to evidence that during the two-year period surrounding the execution of his will the testator soiled his pants in public without realizing it; lost his ability to play checkers; could not remember if he had paid his rent; was hospitalized when he made his will; was belligerent in the hospital; and wrote checks promiscuously. *In re Estate of Morton,* supra. Then we said:

"* * * [A]t best it tends to show no more than the testator was in poor physical condition, forgetful, untidy and unclean about his person, not as alert as in the past, contrary and belligerent on occasion, suspicious, encountered some minor difficulty with money matters, and in general was undergoing a gradual aging process in keeping with his age. Such matters, collectively or alone and without more, do not establish mental incompetency to make a will." *In re Estate of Morton,* supra, 428 P.2d at 732.

The entry of a directed verdict which determined that there was insufficient proof of lack of testamentary capacity as a matter of law was sustained.

Alternatively, it might be possible to infer instances of insane delusions from the Barker affidavits. That would not serve to defeat the presumption of testamentary capacity, however, because:

"* * * [A]n insane delusion does not deprive the testator of the capacity to make a will, if the delusion was not such as to affect his knowledge, memory and understanding of the extent and nature of his estate, the proper objects of his bounty and the nature of the testamentary act. An insane delusion * * * that men were hiding near testatrix, spying on her, and trying to rob her; * * * or a belief that people came into testator's room at night with trucks and that a very large man was trying to get his pocketbook; or that people and cattle were up the trees near his home and that butchering was going on in the trees; * * * or that the national capital was to be moved to a piece of swamp land which the testatrix owned and that she would become very wealthy; does not affect the will in question, and does not render it invalid." 1 Bowe–Parker, Page on Wills, supra, § 12.48 at 657–659.

It is necessary to incorporate a sequential inference if a lack of testamentary capacity in any respect is to be inferred from the Barker affidavits. Given the rules of substantive law set forth above, the court must decide whether that sequential inference can be derived from those affidavits in a way that the law accepts. Such an inference, if properly drawn, would be sufficient to controvert the direct information relating to Roosa's testamentary capacity.

We have discussed, but we have never premised a decision upon, the concept of sequential inferences. In *Downs v. State,* Wyo., 581 P.2d 610 (1978), we said that in

*Rosencrance v. State,* 33 Wyo. 360, 239 P. 952 (1925), and *Richey v. State,* 28 Wyo. 117, 201 P. 154 (1921), *reh. denied* 28 Wyo. 117, 205 P. 304 (1922), the court had alluded to the pyramiding or stacking of inferences but did not directly apply the concept. We also noted that according to Annotation, *Modern Status of the Rules Against Basing an Inference Upon an Inference or a Presumption Upon a Presumption,* 5 A.L.R.3d 100 (1966), the concept was perceived to be extremely technical as well as much criticized. In that case, we distinguished the situation from the pyramiding of inferences, however, and we, in effect, made the same distinction in *Cowell v. State,* Wyo., 719 P.2d 211 (1986).

The concept of sequential inferences is addressed in 1A Wigmore, Evidence § 41 (Tillers Rev. 1983). The treatise denies the existence of an orthodox rule to the effect that an inference upon an inference will not be permitted and adopts with approval the rationale set forth in *New York Life Insurance Company v. McNeely,* 52 Ariz. 181, 79 P.2d 948 (1938). The Wigmore treatise presents a rational analysis which avoids an arbitrary rule prohibiting the stacking of inferences and, at the same time, avoids reliance by the fact finder upon remote inferences. Wigmore's analysis is directly related to the quality of the evidence concept articulated in *Kobielusz v. Wilson,* supra, and prevents resolution upon little more than a guess. The result is that an inference may be drawn from an inferential fact, that is a fact that itself was inferred, when the prior inference excludes any other reasonable theory or alternative inference. A mere probability that the prior fact exists is not sufficient to sustain the next sequential inference.

Applying that approach, in this instance, we are satisfied that, other than a conclusional statement that Roosa lacked the capacity to sign a will, the facts in the Barker affidavits do not lead to any inference with respect to Roosa's comprehension of the extent and nature of his estate, the identity of and the nature of his relationship to the beneficiary, or the nature of the disposition of the property that was to take effect at his death. From the information in those affidavits, one could infer general incapacity, but not to the exclusion of simple eccentricity or the impact of advancing age discussed in *In re Estate of Morton,* supra. In accordance with the analysis of the sequential inference proposition in *Wigmore,* supra, it would not be proper to draw the successive inference, lack of testamentary capacity. Neither would an inference of insane delusion represent an exclusive theory on the basis of the Barker affidavits. Even if it were, the substantive law does not treat insane delusions as preventing testamentary capacity unless it appears that persons having a special claim to the bounty of the testator are the object of such delusions. *In re Estate of Edwards,* Fla.App., 433 So.2d 1349 (1983). Nothing in the Barker affidavits indicates any information relating to the contestants.

Resolving then whether this record creates a genuine issue of material fact, we agree with the district court that it does not. The quality of the materials presented by the appellants does not permit the inference of any fact which controverts the factual material presented by the executor and the beneficiary that Roosa was possessed of testamentary capacity according to the Wyoming standard. The district court correctly ruled that there was no genuine issue of material fact manifested as to Roosa's testamentary capacity.

In their second issue, appellants contend that the appointment of a guardian pursuant to the Uniform Veterans' Guardianship Act, §§ 3–6–101 through 3–6–119, W.S.1977 (May 1985 Replacement), results in a presumption of lack of testamentary capacity. They argue that this presumption is not overcome by the evidentiary materials presented by the appellees to the trial court, and thus, a genuine issue of material fact can be found premised upon the presumption. The appellants rely upon language from 79 Am. Jur.2d *Wills* § 153 at 386 (1975), to the effect that an adjudication of insanity constitutes prima facie evidence of lack of testamentary capacity. While that principle may be sound, it is not pertinent here. The Uniform Veterans' Guardianship Act

does not specify any grounds for appointment of a guardian. Such a guardianship is of limited effect and relates primarily to the receipt of veterans' benefits. The conclusion of the Veterans' Administration as to incompetency does not depend upon a finding of insanity which would justify an adjudication in state courts. Annotation, *Constitutionality, Construction, and Effect of the Uniform Veterans' Guardianship Act,* 173 A.L.R. 1061 (1955). The ordinary procedural safeguards involved in the creation of guardianship are not required under the Uniform Veterans' Guardianship Act. Furthermore, the appointment of a guardian or conservator in this state does not constitute any adjudication of unsoundness of mind or lack of testamentary capacity. Section 3–1–201, W.S.1977 (1985 Replacement). We hold that the creation of a guardianship pursuant to the Uniform Veterans' Guardianship Act does not result in any presumption of insanity or lack of testamentary capacity, a conclusion that is supported by authority elsewhere. *Morse v. Caldwell,* 55 Ga.App. 804, 191 S.E. 479 (1937); Annotation, 173 A.L.R. 1061, supra, and cases cited therein.

Our examination of this record under the appropriate standards persuades us that the appellees successfully demonstrated that there was no genuine issue of material fact as to Gordon C. Roosa's testamentary capacity. The appellants were not successful in structuring any genuine issue of fact with respect to lack of testamentary capacity on his part, and the district court, properly having applied the appropriate standard, correctly entered summary judgment in favor of the appellees. The order of the district court is affirmed.

CARDINE, J., filed a special concurrence, in which MACY, J., joined.

CARDINE, Justice, specially concurring, with whom MACY, Justice, joins.

I agree with the result reached by the majority. I wholeheartedly agree with the majority's conclusion that "[a] properly drawn inference, contrary to direct testimony, can serve to structure a genuine issue of material fact." I part with the majority, however, when it ventures into an unnecessary and troublesome discussion concerning sequential inferences and their questionable application to summary judgment proceedings.

I see no reason to inject further uncertainty into the area of summary judgment. The majority's discussion of sequential inferences does just that. Particularly troubling are the following statements:

"The result is that an inference may be drawn from an inferential fact, that is a fact that itself was inferred, when the prior inference excludes any other *reasonable* theory or alternative inference. A mere *probability* that the prior fact exists is not sufficient to sustain the next sequential inference." (Emphasis added.)

In my view, conclusions such as what is "reasonable" and what is a "mere probability" should be left to the trier of fact.

The majority explains that while the materials submitted by appellant could support an inference of general incapacity, eccentricity, senility, or insane delusions, these inferences are insufficient to establish lack of testamentary capacity, which is a different concept. Then the majority states that "[i]t is necessary to incorporate a sequential inference if a lack of testamentary capacity in any respect is to be inferred from the Barker affidavits." The following potential "sequential inference" is then identified: Evidence of general incapacity, eccentricity, senility, and/or insane delusions may be sufficient to establish lack of testamentary capacity. This is precisely the idea which the majority rejects as a matter of substantive law. The evidentiary concept of "sequential inferences," cannot possibly affect our discussion of this case. It can only serve to further confuse the law of summary judgment. I would simply hold that appellant, even with the benefit of all favorable inferences, failed to establish a genuine issue of material fact.