(675 P.2d 939)

No. 55,425

In the Matter of the Estate of Roy Sykes, an incompetent person.

Opinion filed February 9, 1984.

*Michael Gibbens,* of Kansas City, for appellant Michael Redmon.

*Joseph H. McDowell,* of McDowell, Rice & Smith, Chartered, of Kansas City, and *David A. Vorbeck,* of Margolin and Kirwan, of Kansas City, Missouri, for appellee Odevia M. Sykes.

Before Abbott, P.J., Parks, J., and Harry G. Miller, District Judge, Retired, Assigned.

Parks, J.: Appellant is the curator/guardian of the person and estate of Roy Sykes pursuant to K.S.A. 73-501 *et seq.,* the Uniform Veteran's Guardianship Act. He appeals the district court's exercise of jurisdiction to consider a petition to restore the ward to capacity in the face of a finding by the Veterans Administration (VA) that the ward is incompetent.

The ward, Roy Sykes, is an 88-year-old veteran of World War I. Several years after the war, he began to suffer seizures which were believed to be the result of his military service. Consequently, Sykes became eligible to receive veterans disability benefits. However, because the VA did not believe Sykes to be competent to manage the receipt of these funds, a guardian was appointed for that purpose pursuant to K.S.A. 73-501 *et seq.* Throughout the years it was the practice of the guardian to receive payment of the benefits and disburse some portion fixed

by the court to the ward for his daily living expenses while investing the surplus funds in a manner approved by both the court and VA.

In 1980 Roy Sykes married Odevia Sykes who was then substituted as curator, the term used to describe a conservator under this act. She later resigned this responsibility and Michael Redmon was appointed to succeed her pursuant to K.S.A. 73-501 *et seq.* Shortly after resigning as curator, Odevia filed a petition for restoration of Roy Sykes to capacity. The Veterans Administration reviewed its records and found Sykes to still be incompetent. Based on this finding, the curator opposed the petition to restore capacity on the grounds that it was beyond the jurisdiction of the court and factually unwarranted.

At the hearing the VA psychiatrist, Dr. Bruschi, testified that Roy Sykes had no actual mental disorder and conceded that he was capable of competently handling the receipt of a monthly benefit check. However, Sykes still has an estate of $38,000 which was derived from interest accrued on past benefits and this amount was believed by Dr. Bruschi to be beyond Sykes' ability to administer. Therefore, Dr. Bruschi testified that Sykes was incompetent for VA purposes. Dr. Ibarra's testimony was very similar in that he also believed Sykes could become the victim of abuse if he had access to his entire estate. He found Sykes fully capable of handling the maximum amount of monthly VA benefits he could receive.

In light of this testimony, the district court held that the ward was mentally competent and not in need of a guardian under the probate code but incompetent for VA purposes. The temporary curator, Redmon, was appointed permanent curator and ordered to control and invest the ward's estate pursuant to K.S.A. 73-501 *et seq.*, but to pay over to Sykes the $1,199 benefit payment received each month from the VA.

The curator appeals this decision contending that the court lacked jurisdiction to consider a petition to terminate the curatorship in the face of the VA's continued rating of Sykes as incompetent. The petitioner argues that the requested termination was filed pursuant to the Kansas probate code. Thus, she contends that there was no conflict with federal regulation because all that was sought was relief under the probate law. However, the guardianship was apparently imposed pursuant to

the Uniform Veteran's Guardianship Act since it was premised on the finding of incompetency by the VA and specifically intended to permit receipt of VA benefits. K.S.A. 73-506. There is no indication in the record that Sykes has ever been adjudicated incompetent pursuant to the Kansas probate code. Therefore, any action to remove the disability imposed by the court could only be directed at termination of the curatorship. Nevertheless, it is clear from the record that the court did not terminate the curatorship but simply directed the actions of the curator. Therefore, the correct issue to be determined is whether the action taken by the court was within its jurisdiction.

The law creating the VA and various benefit programs for veterans authorizes the administrator to direct payment of benefits to a legally appointed guardian or de facto caretaker when the veteran is believed to be incapable of receiving the funds. 38 U.S.C. § 3202 (1976). The Uniform Veteran's Guardianship Act was drafted to provide a speedy and uniform means of establishing a guardianship for the sole purpose of receiving and managing veteran's benefits. *In re Rickell's Estate,* 158 Md. 654, 657, 149 A. 446 (1930). Once a veteran is rated incompetent through the administrative processes of the VA, a curator may be appointed in state court and the rating itself serves as prima facie evidence of incompetency. K.S.A. 73-506. However, the VA finding is not binding on the court and despite the directory language of K.S.A. 73-502, the court may exercise its discretion in deciding whether such an appointment should be made. *Rickell's Estate,* 158 Md. at 659. The curatorship created under the uniform act is limited to the receipt of veteran's benefits and the finding of incompetency has no bearing on the veteran's capacity to contract or manage assets received from other sources. *Estate of Vaell,* 158 Cal. App. 2d 204, 211-12, 322 P.2d 579 (1958); *Morse v. Caldwell,* 55 Ga. App. 804, 191 S.E. 479 (1937). In sum, the curatorship is simply a device by which a state may protect its citizen veterans and facilitate receipt of federal benefits. There is no indication in either the uniform act or the federal regulations that the power of the court to direct the actions of a fiduciary it appoints is limited or subject to direction by the VA.

The VA is empowered to control disbursement of benefits by directing payment to the veteran (under a supervised program if the veteran is rated incompetent), to the spouse of the veteran,

his legal custodian or to a court-appointed fiduciary. 38 C.F.R. § 13.55 (1983). It may also suspend the payment of benefits to a curator or custodian who fails to follow VA regulations concerning investment and use of the funds. 38 C.F.R. § 13.100(c) (1983). However, it is the court which may remove a fiduciary who fails to properly account for his actions. K.S.A. 73-510. The VA is given standing to question the accounting or petition for removal of a fiduciary but must direct its request to the court which made the appointment. 38 U.S.C. § 3202(b) (1976).

We conclude that although the veteran's curatorship may be created in response to a finding of incompetency by a federal agency, it is the creating court which must determine its administration. The court should exercise the same discretion in overseeing a curatorship as it would any other guardianship or conservatorship. The VA still controls the source of the funds to be administered and may direct payment to someone other than the court-appointed fiduciary, but it is the court which directs the management and control of these funds by the curator and which creates and terminates the curatorship.

The court's order directing the curator to turn over the monthly payment to the ward for his personal disposal was consistent with the evidence and within the jurisdiction of the court. Furthermore, we find no abuse of discretion was committed.

Affirmed.