14846.   CHALKER *v.* THORNTON.

JENKINS, P. J.   1. The provisions of section 3037 of the Civil Code (1910), are as follows: "In the appointment of guardians the widowed mother shall have the preference, upon complying with the law. Among collaterals applying for guardianship, the nearest of kin by blood, if otherwise unobjectionable, shall be preferred—males being preferred to females. The ordinary, however, in every case may exercise his discretion according to the circumstances, and if necessary, grant the letters to a stranger in blood." Prior to the adoption of the code it was said in *Watson* v. *Warnock,* 31 *Ga.* 716 (1), that "In Georgia no one has a right to the guardianship of an infant under the age of fourteen years, other than his own; but the power of appointment is vested in the ordinary, for the benefit of the child." "The power is given to the ordinary to be exercised for the benefit of the infant, not the applicant. In Georgia no one can claim the guardianship of a child other than his own, as a right, no matter how clearly related." After the adoption of the code it was held, in *Johnson* v. *Kelly,* 44 *Ga.* 485, that "a stranger cannot justly invoke the exercise of a discretion vested by law in the ordinary when the nearest of kin is unobjectionable;" and in *Armor* v. *Moore,* 104 *Ga.* 579, 581 (30 S. E. 821), the rule adopted appears to be that the next of kin, if unobjectionable, is "absolutely entitled to the guardianship without reference to other considerations."

2. "In a contest between persons for the guardianship of the person and property of a child, to which neither is entitled as a matter of legal right, the ordinary, or on appeal the judge of the superior court, on his own motion or on request of the jury, may in his discretion ascertain the wishes of the child, by examination, as to which of the contesting parties it prefers for its guardian, although the child is under fourteen years of age." *Walton* v. *Twiggs,* 91 *Ga.* 90 (1) (16 S. E. 313). In *Watson* v. *Warnock,* supra, which was decided before the adoption of the code and was a contest between two grandparents, it was held that "the requests of the parent of the infant, on his death-bed, as to the guardianship of the person and property of the child, is a proper cir-

cumstance to be considered by the jury, and, all other things being equal, sufficient to turn the scale." See also *Churchill* v. *Jackson*, 132 *Ga.* 666, 670 (64 S. E. 691, Ann. Cas. 1913E, 1203), which was also a contest between grandparents of the child. It would seem to be doubtful, however, whether such declarations in favor of a stranger would be admissible if objected to, against one seeking appointment as next of kin, unless such declarations could be construed as throwing light upon the question of fitness. No exception is here made to this admission.

3. Construing the holdings referred to above, in the first paragraph, to mean that, as against a stranger, the next of kin, if unobjectionable, is absolutely entitled to appointment, this does not mean that he or she, in order to forfeit such right, must be proved to be deficient in habits, temper, morality, sobriety, or sense. The evidence does not attack the plaintiff in error, the next of kin, in any of these respects. If, under all the proved facts and surrounding circumstances, the jury could have been authorized to believe that for any reason her appointment might reasonably embarrass or jeopardize the property rights of the child, the next of kin could not claim the appointment as a matter of right under the statute. The facts and circumstances appearing in the record were such as do not permit this court to say, as a matter of law, that the appointment of the next of kin would have been unobjectionable; and, the court having plainly instructed the jury that the next of kin, if unobjectionable, would be entitled, the giving of the quoted section in charge would not justify setting aside the verdict and judgment in favor of the applicant.

*Judgment affirmed. Stephens and Bell, JJ., concur.*

DECIDED MARCH 23, 1924.

Appeal; from Clarke superior court—Judge Fortson. May 28, 1923.

George H. Thornton filed in the office of the ordinary of Clarke county an application to be appointed guardian of the person and property of Joan Wise McGregor, aged twelve years, alleging that both her father and her mother were dead; that, during the lifetime of her mother, Mrs. Louise C. McGregor, the mother was her natural guardian and also the guardian of her property, under appointment of the court of ordinary of Clarke county; that she (the minor) had property of the approximate value of $7500, consisting of 68 shares of the capital stock of The McGregor Company, a corporation of said county, and an interest in the former home place of her grandfather, D. W. McGregor, deceased, on Dearing street in the city of Athens, Georgia, which interest was then in litigation, her former guardian having theretofore instituted in the superior court of Clarke county a suit against her grandmother, Mrs. Joan Wise McGregor, since deceased, and Miss Jessie McGregor, to recover that interest.

A caveat to this application was interposed by Mrs. Margaret C. Chalker, a resident of Miami, Florida, who was a half-sister of Mrs. Louise C. McGregor, the mother of the said minor, and who asked that she be appointed guardian of the person and property of the minor. The ordinary overruled the caveat, and appointed the applicant, George H. Thornton. Mrs. Chalker appealed to the superior court, and a jury on the trial of the appeal found in favor of the applicant. Mrs. Chalker's motion for a new trial was overruled, and she excepted.

The evidence showed that the minor's mother, Mrs. Louise C. McGregor, moved to New York City for employment, and while there, a few days before her death, wrote a letter to George H. Thornton, the applicant, in which she said: "Mr. Thornton, if anything should happen to me, look after Joan's interest, which I know you will." The applicant also put in evidence a letter of the minor to the ordinary of Clarke county, as follows: "I. wish Mr. George, H. Thornton to be appointed my guardian. I am living with my relatives here and wish to continue to live with them, as I am happy and contented." The evidence showed that she was the sole heir-at-law of her mother, and that Mrs. Chalker held a claim against certain property which had been owned by the mother. This was indicated by letters which Mrs. Chalker's attorney had written to the mother. There was other evidence going to show, however, that the mother died without leaving any estate in which the ward might be concerned.

It further appeared that Mrs. Louise C. McGregor, as guardian for the minor, had instituted a suit in the superior court of Clarke county, in which she alleged that the minor had a third undivided interest in the home place of her paternal grandfather, D. W. McGregor, deceased. The defendants in that case were her grandmother, Mrs. Joan Wise McGregor, and her aunt, Miss Jessie McGregor, who afterwards became Mrs. Rylee. The record of this last-mentioned case, which is in the present record, shows that the proceeding was an equitable suit for partition and accounting, and it was contended that the prosecution of such important litigation should not be entrusted to a nonresident of the State of Georgia. Mrs. Chalker admitted that the opposition to Mr. Thornton's appointment as guardian was instigated by Miss Jessie McGregor,

afterwards Mrs. Rylee. It appears that in contesting Thornton's appointment Mrs. Chalker had advised with Mrs. Rylee, and that Mrs. Chalker had not herself paid the necessary court costs on the appeal, or any attorney's fees in the case under consideration. It was shown that she did not appear in court in person, but testified by deposition. Four of the minor's relatives, including Mrs. Rylee, recommended Mrs. Chalker for appointment as guardian.

A number of witnesses testified as to the high standing of Mr. Thornton and his fitness to be appointed guardian. The only objection urged against his appointment was that a large part of the minor's estate was invested in stock of The McGregor Company, of which Mr. Thornton was a stockholder and director, and that Mr. Thornton and his associates had improperly increased their salaries and, during the period of business inflation, voted bonuses to themselves. There was no suggestion that this was not done by proper corporate action. It was also suggested that, if Mr. Thornton were appointed guardian, he would be in a position to vote the ward's stock in matters that might be detrimental to her interest. It was further shown, however, that Mr. Thornton and his associates owned and controlled a majority of the capital stock of The McGregor Company, and it was contended that the right to vote the minor's stock could not in any manner affect the control and direction of the business.

*West & West*, for plaintiff in error.
*Erwin, Erwin & Nix*, contra.