## A00A2565. HUVAL v. JACOBS et al.
(548 SE2d 437)

RUFFIN, Judge.

C. J.'s parents were killed when she was seven years old. Her grandmother, Gerlie Huval, applied for guardianship and was appointed as the child's temporary personal guardian.[1] C. J.'s aunt and uncle (hereinafter referred to as "appellees") then intervened, objecting to the grandmother's appointment and seeking to have themselves appointed as guardians. Following a hearing, the juvenile court[2] appointed the appellees as the child's personal guardians.

On appeal, Huval contends that the juvenile court was required to appoint her as guardian pursuant to OCGA § 29-4-8 because she is C. J.'s next of kin. For reasons discussed below, we disagree.

1. OCGA § 29-4-8 provides that

> [a]mong collateral relatives applying for the guardianship of a minor child, the nearest of kin by blood, if otherwise unobjectionable, shall be preferred. The judge of the probate court, however, may exercise his discretion according to the circumstances of each case and, if necessary, may grant the letters of guardianship to one who is not a blood relative.

---

[1] The county administrator, Michael Smith, was appointed guardian of the child's property.

[2] The guardianship action was originally initiated in probate court. Appellees intervened in this action and also filed a separate petition for custody in superior court, which transferred the matter to the juvenile court. The probate court then designated the juvenile court judge to hear the guardianship matter. The juvenile court judge consolidated the matters for hearing and treated the contest as a guardianship action.

Several cases have held that "[t]he nearest relative . . . has an *absolute* right to the appointment if unobjectionable."[3] We are aware of no cases, however, that provide a comprehensive definition of "unobjectionable" or conclusively establish what it means to be "objectionable."

Perhaps the closest definition for the term "unobjectionable" is found in *Armor v. Moore*, where the Supreme Court stated that

> [i]n determining whether or not John W. Moore was "unobjectionable," — *that is, was a suitable person to be appointed the guardian of his brother*, — the amount, character and condition of the latter's estate were pertinent matters of inquiry.[4]

The *Armor* decision suggests that an "unobjectionable" person is one "suitable . . . to be appointed the guardian." Unfortunately, the Court did not expound on what it meant by "suitable." In *Beavers v. Williams*,[5] however, the Supreme Court commented on the overriding principle in guardianship cases, stating that "cases dealing with the appointment of guardians for minor children show that the paramount duty of the court in such cases is to appoint the person in whose custody the interests and welfare of the child will be best served."[6] Although *Beavers* did not involve the statute at issue here, it indicates that a person's suitability for guardianship cannot be determined without considering the "interests and welfare of the child."

In *Johnson v. Kelly*, the Supreme Court provided additional guidance for determining whether someone is unobjectionable:

> We remark, generally, that when the question before the Court and jury is the fitness of a person for guardian, the limitation upon the inquiries within the scope of his capacity and ability is not laid down, so that the questions are pertinent. It is proper to ascertain his habits, temper, morality, sobriety, sense, and responsibility, or the contrary.[7]

We have also recognized that a court reviewing an applicant's "objectionability" may take into account the child's financial inter-

---

[3] (Emphasis supplied.) *Kelley v. Kelley*, 129 Ga. App. 257, 259 (1) (199 SE2d 399) (1973). See also *Abrams v. Daffron*, 155 Ga. App. 182, 183 (270 SE2d 278) (1980); *Armor v. Moore*, 104 Ga. 579, 581 (30 SE 821) (1898); *Johnson v. Kelly*, 44 Ga. 485, 487 (1871).

[4] (Emphasis supplied.) Supra at 581 (3).

[5] 194 Ga. 875 (23 SE2d 171) (1942).

[6] Id. at 878.

[7] Supra at 486 (1).

ests. In *Chalker v. Thornton*,[8] we held that while an unobjectionable next of kin might have an absolute right to appointment,

> this does not mean that he or she, in order to forfeit such right, must be proved to be deficient in habits, temper, morality, sobriety, or sense. . . . If, under all the proved facts and surrounding circumstances, the jury could have been authorized to believe that for any reason her appointment might reasonably embarrass or jeopardize the property rights of the child, the next of kin could not claim the appointment as a matter of right under the statute.[9]

In *Kelley v. Kelley*, we further held that "the words objectionable, or even unfit, refer not to moral qualities exclusively but to any position or course of dealing which leads to the conclusion that the interest of the person selected is adverse to that of the estate."[10]

Although these cases do not offer a comprehensive definition of the term "unobjectionable," they reveal that the court has wide discretion in determining whether an applicant is entitled to the absolute preference set forth in OCGA § 29-4-8. And it is apparent that "objectionability" in a guardianship dispute is not the same as "parental unfitness," which must generally be shown before a court can interfere with a parent's right to custody over a child.[11] An inquiry into a guardianship applicant's "unobjectionability" may broadly consider the applicant's suitability, habits, responsibility, sense, and morality, as well as the financial interests of the child. A person may be "objectionable," and therefore not entitled to guardianship as a matter of right, even though the objections would not authorize interfering with her right to custody of her own child.

In the present case, the juvenile court made several findings to support its conclusion that Huval was not "unobjectionable." For example, the court noted that Huval had "not exhibited good parenting skills in regard to her two [living] children" and had "led an inappropriate lifestyle in the presence of minors in the past." The court noted that Huval divorced the children's father when they were young and then "had two long term live in relationships while the minor children lived in her house." One of the children went to live with her father for a year when she was thirteen because of "difficulties in her relationship with her mother" and subsequently left home before finishing high school. The court found that Huval "has time

---

[8] 31 Ga. App. 791 (122 SE 244) (1924).
[9] Id. at 792 (3).
[10] (Emphasis omitted.) Supra at 259.
[11] See *Villenueve v. Richbourg*, 217 Ga. App. 354 (1) (457 SE2d 821) (1995).

and again made poor moral . . . decisions" and that "[e]ducational success has not been a priority for her or her children." The court stated that "the prospects of successful parenting of a child can to some extent be gauged by past success or failure in this realm" and concluded that Huval's "family environment has been and would be chaotic, undisciplined and constantly shifting."

Huval does not challenge these findings, but essentially claims that they are not sufficient to deprive her of the automatic preferment granted the next of kin. We do not agree. Regardless of whether the objections described by the juvenile court would render Huval an "unfit parent," concerns over a guardianship applicant's ability to properly raise children, grounded in her actual experience with her own children, are sufficient to deprive the applicant of the absolute right to appointment set forth in OCGA § 29-4-8 in the circumstances of this case.[12] Huval does not dispute the juvenile court's conclusion that appointment of appellees as personal guardians is in the best interest of the child. Accordingly, since Huval was not entitled to the absolute preference, the court did not err in granting guardianship based on the best interest of the child.[13]

2. Although not necessary for our decision, we feel compelled to address an issue raised by C. J.'s guardian ad litem. Recently, in *Stills v. Johnson*,[14] the Supreme Court considered the standard governing a custody dispute between a child's paternal grandmother, to whom parental power had been transferred by the child's father, and the child's maternal uncle. The Court held that the voluntary transfer of parental power to the grandmother did not give her a superior right to custody that could be overcome only upon a showing of unfitness.[15] Rather, "where two parties seek custody of a child, and neither is a parent of the child, custody is to be governed by the standard of best interest of the child."[16] In reaching its decision, the Court noted that

> [a]s between parents seeking custody, the best interest standard is applied. In a custody dispute between two nonparents, the standard must also be the best interest of the child. Otherwise the law would protect a child more in a cus-

---

[12] The trial court also expressed concerns over Huval's financial decision-making ability, concerns Huval contends are misplaced. Since the court's nonfinancial objections were sufficient to overcome the automatic preference, however, we need not address the financial concerns.

[13] See *Beavers*, supra at 878 ("[T]he paramount duty . . . is to appoint the person in whose custody the interests and welfare of the child will be best served.").

[14] 272 Ga. 645 (533 SE2d 695) (2000).

[15] Id. at 649.

[16] Id. at 645.

tody dispute involving his or her own parent than in one involving non-parents. . . . The purpose of the standard we now adopt is to ensure that children are treated fairly as individuals and that a determination of custody as between non-parents will focus on their best interests, welfare and happiness.[17]

The Supreme Court did not discuss whether its analysis would apply in guardianship disputes, did not mention OCGA § 29-4-8 or suggest that it is unconstitutional, and did not overrule any of its prior cases construing the statute. Yet, C. J.'s guardian ad litem argues that *Stills* "demand[s] that the wording of OCGA § 29-4-8 be either set aside completely or construed to mean that any proposed guardian is objectionable if the appointment is contrary to the best interest of the child." Given our decision in Division 1, we need not conclude that *Stills'* reasoning extends to guardianship disputes. Indeed, we would hesitate to do so, since that would require us to find that the Supreme Court either (1) implicitly overruled its prior cases construing OCGA § 29-4-8 or (2) implicitly held the statute unconstitutional to the extent that it allows anything other than a best interest of the child test.[18]

Nevertheless, we recognize that application of any type of preference for the next of kin in a guardianship dispute raises a potential for conflict with the *Stills* decision because "a guardian of a minor is entitled to the custody of his ward."[19] If OCGA § 29-4-8 continues to apply in guardianship disputes, and the next of kin is entitled to an absolute preference if unobjectionable, then custody of the minor child will be effectively decided under something other than a best interest of the child test, which is contrary to the policy enunciated in *Stills*. Although it is not necessary for us to resolve this issue here, we believe that the Supreme Court will in the future be required to address the continued viability of OCGA § 29-4-8 in guardianship disputes.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 21, 2001.

*Joseph M. McLaughlin, Christopher J. McFadden*, for appellant.

---

[17] (Footnote omitted.) Id. at 650 (2).

[18] This Court, with limited exceptions, is generally without jurisdiction to rule on the constitutionality of a statute. See *Helmeci v. State*, 230 Ga. App. 866, 868 (1) (498 SE2d 326) (1998).

[19] (Punctuation omitted.) *Beavers*, supra at 878.

*Land, Cohen & Keon, Barbara E. Keon, Edgar J. Perkerson III,* for appellees.