<span style="text-align:center">DECIDED FEBRUARY 3, 1999.</span>

*Patterson & Patterson, Jackie G. Patterson, Yasma Patterson,* for appellant.
*Peter J. Skandalakis, District Attorney, Monique F. Kirby, Assistant District Attorney,* for appellee.

## A98A2227. IN RE ESTATE OF DUNN.
(511 SE2d 575)

JOHNSON, Chief Judge.

Bridget Gallagher Dunn was appointed administrator of the estate of Ronald Edward Dunn based on her claim that she was the decedent's spouse at the time of his death on June 20, 1996. Elizabeth Ann Dunn, the adult daughter of the decedent, subsequently filed a petition to remove Bridget Dunn as administrator and for an accounting. Bridget Dunn appeals the probate court's order removing her as administrator.

1. Bridget Dunn contends the probate court erred by requiring her to prove that she was the common-law spouse of the decedent. For reasons hereinafter discussed, Bridget Dunn had the burden of proving her common-law marriage after Elizabeth Dunn proved that Bridget Dunn and Ronald Dunn had been divorced.

(a) Bridget Dunn lawfully married the deceased in a ceremonial marriage in 1986. They were divorced in 1994. When Bridget Dunn's total divorce became final, her legal status changed from being "married" to being "single," see OCGA § 19-5-15, and any common-law marriage would have had to occur between the date of the divorce and the death of the deceased.[1] In Georgia, once it is unequivocally established that a state of things or a particular status exists, it is presumed that this status or state of things will continue to exist, until the contrary is shown. This rule has been referred to as the doctrine or presumption of continuity. See *Bass v. Bass,* 222 Ga. 378, 381 (1) (149 SE2d 818) (1966). Thus, as soon as Elizabeth Dunn proved

---

[1] While no common-law marriage shall be entered into in this state on or after January 1, 1997, valid common-law marriages entered into prior to that date shall continue to be recognized. OCGA § 19-3-1.1.

the divorce, Bridget Dunn had the burden of proving her common-law marriage to Ronald Dunn. As discussed in Division 2, the record reveals that after Elizabeth Dunn proved the divorce, Bridget Dunn failed to carry her burden of proving her subsequent common-law marriage.

In its order, the probate court concluded: "Based on the . . . evidence this court finds that there was insufficient proof as to the existence of a common-law marriage." This is a correct holding. Bridget Dunn's enumeration of error is without merit.

(b) The probate court initially ruled that because Bridget Dunn had been appointed and had functioned as the administrator, Elizabeth Dunn had the burden of proving the non-existence of a common-law marriage. Bridget Dunn claims that because of this ruling, she introduced only that evidence which was necessary to rebut Elizabeth Dunn's testimony. However, the record fails to support Bridget Dunn's contention that she held back any relevant evidence in reliance on this ruling. Moreover, she has not shown on appeal what admissible evidence she would have offered had it not been for the probate court's ruling. This Court will not reverse cases based on speculation; an appellant must show both error and harm before this Court will reverse the judgment of a trial court. *Whelchel v. Thomas Ford Tractor*, 190 Ga. App. 156 (1) (378 SE2d 510) (1989).

2. Bridget Dunn contends the probate court erred in failing to find that the evidence of record, including evidence of connubial habit, gave rise to a presumption of the validity of her common-law marriage to Ronald Dunn. This contention is not supported by the record.

(a) The order of the probate court does not contain an express finding as to the existence of connubial habit. The order is also silent as to whether the trial court elected not to apply a presumption of validity of a common-law marriage or whether it applied the presumption and then concluded it had been successfully rebutted by other admissible evidence. Error will not be presumed from a silent record; it must be affirmatively shown. *Rowe v. Rowe*, 195 Ga. App. 493, 494 (2) (393 SE2d 750) (1990); *Williams v. State*, 188 Ga. App. 496, 499 (3) (373 SE2d 281) (1988).

(b) The evidence is conflicting as to whether Bridget Dunn and the deceased entered into a common-law marriage. While Bridget Dunn presented some evidence of her alleged common-law marriage to the deceased, evidence to the contrary also exists. For example, for several consecutive years Bridget Dunn filed federal income tax returns as a single person, she did not have a joint checking, savings or credit card account with the deceased, she held title to her home and her automobile in her own name, and she kept her bills separate from those of the deceased. The deceased's sister testified that

Bridget Dunn told her on numerous occasions, after the Dunns' divorce, that Ronald Dunn was not her husband. The deceased's sister also testified that both Bridget and Ronald Dunn "were very adamant" that they were divorced.

The evidence, when construed in favor of the judgment, is sufficient to establish that Bridget Dunn did not consistently claim or engage in conduct consistent with the existence of a common-law marriage. See *Baynes v. Baynes*, 219 Ga. App. 848, 849 (1) (467 SE2d 195) (1996). She would say she was divorced or single when it was convenient or advantageous for her to do so. A legal marital relationship cannot be partial or periodic. Id.; *Wright v. Goss*, 229 Ga. App. 393, 395 (1) (494 SE2d 23) (1997). Thus, there exists evidence in the record to support the probate court's finding that there was insufficient proof of a common-law marriage.

Bridget Dunn's reliance on *Brown v. Brown*, 234 Ga. 300 (215 SE2d 671) (1975), is not warranted. *Brown* does not involve a situation where the parties previously were divorced from each other.

3. Bridget Dunn contends the probate court erred in removing her as administrator and appointing a county administrator without finding any legal ground for removal. Because the probate court did not abuse its discretion in resolving this matter, we find this contention is without merit.

The probate court made a finding of fact that the basis for Bridget Dunn's appointment as administrator was her claim that she was the wife of the deceased at the time of his death. The court also found that the sole issue at the removal hearing was whether Bridget Dunn was, in fact, the common-law spouse of the deceased at the time of his death and thus entitled to serve as administrator. The probate court revoked Bridget Dunn's letters of administration after finding that the evidence was insufficient to establish a common-law marriage.

Bridget Dunn asserts, however, that where there is no allegation of mismanagement, her letters of administration can be revoked only on the grounds of a false and fraudulent representation in the application for letters of administration. Thus, she contends that because the probate court did not enter findings of false and fraudulent representation, her letters could not be revoked. We are not persuaded by this contention.

A probate court has broad discretionary powers under OCGA § 53-7-148. It may remove an administrator upon a showing of waste, mismanagement, insolvency of sureties, refusal or failure to make returns, or if "for any reason [she] is unfit for the trust reposed in [her]." OCGA § 53-7-148; see *Nesmith v. Pierce*, 226 Ga. App. 851, 852 (1) (487 SE2d 687) (1997). The word "unfit," as used in this statute, is given a broad meaning and is not merely limited to physical, mental,

or moral conditions. See *McLendon v. McLendon*, 96 Ga. App. 197, 198 (1) (99 SE2d 489) (1957). The term also includes "legal disqualification under the will" and situations where the administrator is otherwise unsuitable or not qualified. Id.; cf. *Morse v. Caldwell*, 55 Ga. App. 804 (191 SE 479) (1937).

The Official Code of Georgia imposes no express limitations on the scope of a probate court's inquiry as to the fitness and capacity of an administrator. Cf. *Morse*, supra at 805, hn. 2 (a), 817. A probate court may consider, as an additional factor, the best interests of the estate. Cf. *Ivey v. Ivey*, 266 Ga. 143, 145 (4) (465 SE2d 434) (1996) (removal of trustee). While a petition to remove an administrator should be carefully scrutinized and removal should not be directed for slight causes, each case must be adjudicated on its own merits. An appellate court will not normally reverse a probate court's determination to remove or retain an administrator in the absence of an abuse of discretion. See *Perdue v. McKenzie*, 194 Ga. 356, 366 (21 SE2d 705) (1942); *Nesmith*, supra.

Whether Bridget Dunn negligently or intentionally misstated her status as a spouse when seeking letters of administration is not the controlling question in this case. The controlling question is whether the facts stated in Bridget Dunn's application were accurate and, if inaccurate, whether such facts were material either in establishing her statutory qualification as an administrator or in influencing the probate court's exercise of discretion in granting letters of administration where no statutory priority exists. See generally OCGA §§ 53-6-24; 53-6-25. The findings and conclusions of the probate court establish that Bridget Dunn's marital status was not correctly stated in her application and that this incorrect information was a material factor in the issuance of letters of administration to her. See also OCGA §§ 53-6-20 (Rev. Probate Code of 1998); 53-6-24.

Under the totality of the circumstances in this case, Bridget Dunn has failed to establish that the probate court abused its discretion in removing her as the administrator of the deceased's estate. This conclusion is also supported by the broad power of a court to amend and control its orders, so as to make them conformable to justice, and to correct its own proceedings before final judgment. OCGA § 15-1-3. The probate court did not err as enumerated.

Bridget Dunn's reliance on *Watson v. Watson*, 208 Ga. 512, 515 (1) (67 SE2d 704) (1951); *Jackson v. Jackson*, 179 Ga. 696, hn. 2 (177 SE 591) (1934); and *Wallace v. Wallace*, 142 Ga. 408 (2) (83 SE 113) (1914), is misplaced. Each of these cases involves equity proceedings, and none expressly holds that where mismanagement is not alleged the only ground for revoking letters of administration is to establish false and fraudulent misrepresentations in an application for letters of administration. Questions which merely lurk in the record, neither

brought to the court's attention nor ruled upon, have not been decided so as to constitute precedent. See *Gordy Tire Co. v. Dayton Rubber Co.*, 216 Ga. 83, 89 (1) (114 SE2d 529) (1960).

*Judgment affirmed. Smith and Barnes, JJ., concur.*

DECIDED FEBRUARY 3, 1999.

*McCullough & Payne, Ashley E. Sexton, Hinton & Powell, Andrew J. Hinton, Jr.*, for appellant.

*Potts & Badaruddin, James H. Potts II, Shandor S. Badaruddin, Charles H. Edwards*, for appellee.