**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 26, 2020**

# In the Court of Appeals of Georgia

A20A1418. JOINER-CAROSI v. ADEKOYA.

COOMER, Judge.

Temitope John Adekoya filed an action against Staci Anne Joiner-Carosi to recover damages for personal injuries he allegedly sustained in an automobile collision caused by Joiner-Carosi. After a jury trial resulted in a verdict in favor of Adekoya, Joiner-Carosi filed a motion for new trial, which the trial court denied. Joiner-Carosi appeals, contending that the trial court erred by (1) striking a juror for cause; (2) quashing trial subpoenas; (3) excluding evidence of attorney referrals to Adekoya's medical providers; and (4) excluding evidence regarding Adekoya seeking treatment on liens and Adekoya's contracts with his medical providers. For the reasons that follow, we affirm.

On August 5, 2019, Joiner-Carosi served a trial subpoena on non-parties Peachtree Orthopedics and Cherokee Funding, LLC ("Cherokee Funding").[1] Cherokee Funding filed objections and a motion to quash on August 7, 2019. Joiner-Carosi filed a motion to enforce the trial subpoena against Peachtree Orthopedics on August 14, 2019. On August 19, 2019, the first morning of trial, the trial court heard argument on Cherokee Funding's motion to quash. After hearing argument from Cherokee Funding, Joiner-Carosi, and Adekoya, the trial court quashed both the subpoena issued to Cherokee Funding and the subpoena issued to Peachtree Orthopedics.

After ruling on the subpoenas, the trial court heard argument on two motions in limine filed by Adekoya. In one of the motions, Adekoya requested that the trial court prevent the defense from eliciting testimony about any matter concerning how Adekoya's bills had been or would be paid, including liens, letters of protection, or medical funding. In the other motion, Adekoya asked the trial court to bar defense counsel from eliciting testimony or presenting evidence regarding any attorney

---

[1] Joiner-Carosi contends that Cherokee Funding provided medical funding services to Adekoya.

referral of Adekoya to his medical providers. The trial court granted both of Adekoya's motions.

During voir dire, Adekoya's counsel asked the jury panel, "Anybody ever feel suspicious or doubtful whenever they hear about somebody filing a lawsuit because they got hurt in a car wreck?" Seven jurors, including Juror Number Seven, raised their hands. When Adekoya's counsel asked Juror Number Seven about his suspicions or doubts about a person filing a lawsuit for personal injuries, he explained that he has "doubts any time anybody sues anybody" because he has "a generally pessimistic view of people's abuse of the . . ." When asked about the basis for his pessimism, Juror Number Seven responded, "I think societally we abuse the system, and people just want to sue everybody for everything." Juror Number Seven further clarified that the opinion he described is one that he holds "consistently." When Adekoya's counsel asked Juror Number Seven if his opinion caused him to "lean to one direction or another towards the plaintiff or defendant," Juror Number Seven responded, "No, sir." Adekoya moved to strike Juror Number Seven for cause, arguing that he was biased. Joiner-Carosi opposed the motion, arguing that Juror Number Seven said he could be impartial. The trial court granted Adekoya's motion

3

to strike "in an abundance of caution" based on Juror Number Seven's statements "regarding societally abusing the system, et cetera."

The jury trial resulted in a verdict in favor of Adekoya. Joiner-Carosi filed a motion for new trial, which the trial court denied. This appeal followed.

1. Joiner-Carosi first contends that the trial court erred by striking Juror Number Seven for cause. We disagree.

"[T]rial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, based upon the ordinary general rules of human experience, and a trial court may only be reversed upon a finding of manifest abuse of that discretion." *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002) (citations and punctuation omitted). "Trial courts have 'extremely broad discretion' to decide whether to exclude a juror for cause once an adequate inquiry has been conducted. A conclusion on an issue of bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference." *Elliott v. Home Depot U.S.A., Inc.*, 275 Ga. App. 865, 867-868 (2) (622 SE2d 77) (2005) (citations and punctuation omitted). "Where the juror appears partial to one side or the other or through voir dire demonstrates a lack of impartiality, such constitutes good cause for the judge in his discretion to remove the juror to preserve

4

the integrity of an impartial and fair jury trial and serve thereby the ends of justice." *Mobley v. Wright*, 253 Ga. App. 335, 337 (3) (559 SE2d 78) (2002). "A trial judge should err on the side of caution by dismissing, rather than trying to rehabilitate, biased jurors because, in reality, the judge is the only person in a courtroom whose primary concern, indeed primary duty, is to ensure the selection of a fair and impartial jury." *Walls v. Kim*, 250 Ga. App. 259, 260 (549 SE2d 797) (2001). "The trial judge, in seeking to balance the parties' competing interests, must be guided not only by the need for an impartial jury, but also by the principle that no party to any case has a right to have any particular person on their jury." Id.

During voir dire, Juror Number Seven made statements from which the trial court could conclude that he was biased. Under these circumstances, we find the trial court did not abuse its discretion in striking Juror Number Seven for cause. Furthermore, "any error in dismissing the prospective juror for cause was harmless since there is nothing in the record to indicate that defendant did not have the benefit of an impartial jury. A party to a lawsuit has no vested interest in having any particular juror to serve; he is entitled only to a legal and impartial jury." *Morris v. Bonner*, 183 Ga. App. 499, 500 (1) (359 SE2d 244) (1987) (citations and punctuation omitted). Consequently, Joiner-Carosi has not shown reversible error on this basis.

5

2. Joiner-Carosi contends that the trial court improperly quashed the trial subpoenas issued to Peachtree Orthopedics and Cherokee Funding. We find no reversible error.

We review a trial court's ruling on a motion to quash a subpoena for abuse of discretion. *In re Whittle*, 339 Ga. App. 83, 85 (793 SE2d 123) (2016). OCGA § 24-13-22 provides that a subpoena for attendance at a trial shall be issued at the request of any party. "A subpoena may also command the person to whom it is directed to produce the evidence designated therein." OCGA § 24-13-23 (a). "OCGA § 24-13-23 (b) (1) gives the trial court discretion upon timely motion to quash or modify such a subpoena if it is unreasonable and oppressive. This standard is tested by the peculiar facts arising from the subpoena itself and other proper sources." *Hickey v. RREF BB SBL Acquisitions, LLC*, 336 Ga. App. 411, 414 (2) (785 SE2d 72) (2016) (citation and punctuation omitted). "It is well established that when a motion to quash is filed, the party serving the subpoena has the initial burden of showing the documents sought are relevant." *In re Whittle*, 339 Ga. App. at 90 (2) (citation and punctuation omitted). "Items that are neither pertinent nor relevant need not be produced." *Walker v. Bruhn*, 281 Ga. App. 149, 151 (635 SE2d 322) (2006).

On the first morning of trial, the trial court heard argument on Cherokee Funding's motion to quash. Cherokee Funding argued that the subpoena was unreasonable and oppressive because it sought only inadmissible evidence that was ultimately irrelevant to the claims and defenses in this case. Cherokee Funding contended that the evidence is inadmissible because it is collateral source evidence, and that requiring Cherokee Funding to present inadmissible evidence concerning collateral source benefits is inherently unreasonable and oppressive. In addition, Cherokee Funding argued that it is not obligated to produce irrelevant and nonpertinent information, even under subpoena.

"The collateral source rule, stated simply, is that the receipt of benefits or mitigation of loss from sources other than the defendant will not operate to diminish the plaintiff's recovery of damages." *Polito v. Holland*, 258 Ga. 54, 55 (3) (365 SE2d 273) (1988) (citation and punctuation omitted). Because of this rule, "evidence of collateral benefits is not generally material." *Polito*, 258 Ga. at 56 (3).

In response to Cherokee Funding's motion to quash, Joiner-Carosi contended that any documents that Cherokee Funding has on its relationship with Peachtree Orthopedic are both relevant and admissible because that relationship goes to the issues of bias and whether the medical charges are reasonable and necessary.

7

Adekoya argued that the subpoenas should not be enforced because (1) Joiner-Carosi never sought to obtain the records through discovery; (2) the only legal purpose for using the records would be for impeachment by bias, and since none of Adekoya's medical providers would be testifying, there was no testimony to impeach; (3) Adekoya is a college student who attends school in Texas and had flown in for the trial, so any delay of the trial would create prejudice for him; (4) in addition to being inadmissible as collateral source evidence, the records sought are inadmissible as evidence of Adekoya's financial condition; and (5) the records sought have nothing to do with the issues in the case, which, in accordance with the pretrial order, are causation and damages.

The trial court ruled that the subpoenas were in violation of its consolidated pretrial order; that although Joiner-Carosi claimed that the records she sought were important to show potential bias on the part of Adekoya's treating physicians, she failed to explore the relationship between Cherokee Funding and the treating physicians before the eve of trial; and that although potential bias is an issue to be explored with testifying physicians, these issues were waived because Adekoya was not calling any of his physicians to testify. The trial court quashed both the subpoena to Cherokee Funding and the subpoena to Peachtree Orthopedics.

Pretermitting whether the trial court erred by quashing the subpoenas, on appeal, the burden is on the appellant to establish harm, as well as error; "error which is harmless will not be cause for reversal." *Lamb v. Javed*, 303 Ga. App. 278, 282 (2) (692 SE2d 861) (2010). Joiner-Carosi asserts on appeal that her counsel "suspects that the documents would have evidenced funding contracts between Cherokee Funding and Peachtree Orthopedics, the amounts Cherokee funded to Peachtree Orthopedics so they could both continue to invest in personal injury lawsuits, and related information that would go to bias and reasonableness of medical expenses." However, "[t]his Court will not reverse cases based on speculation[.]" *In re Estate of Dunn*, 236 Ga. App. 211, 212 (1) (b) (511 SE2d 575) (1999). Joiner-Carosi has not shown that the alleged error by the trial court would have changed the outcome of the trial, and therefore has failed to show that it was harmful. See *Thornton v. Hemphill*, 300 Ga. App. 647, 651 (3) (686 SE2d 263) (2009). Consequently, we find no reversible error in the trial court's quashal of the subpoenas to Cherokee Funding and Peachtree Orthopedics.

3. Joiner-Carosi asserts that the trial court erred in excluding evidence of attorney referrals to Adekoya's medical providers. We disagree.

9

The admission or exclusion of evidence "is generally committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." *Cooper Tire & Rubber Co. v. Crosby*, 273 Ga. 454, 456-457 (2) (543 SE2d 21) (2001) (citations and punctuation omitted); see *Ray v. Ford Motor Co.*, 237 Ga. App. 316, 317 (1) (514 SE2d 227) (1999). "Questions of relevance are generally matters within the trial court's discretion, and it is not error to exclude evidence that is not related to an issue at trial." *Ray*, 237 Ga. App. at 317 (1) (citations omitted).

Adekoya moved in limine to exclude evidence regarding any attorney referral of Adekoya to any of his medical providers. Adekoya argued that any evidence concerning attorney referrals was irrelevant and prejudicial. The trial court granted this motion in limine.

Joiner-Carosi contends that evidence of attorney referrals to medical providers is relevant and admissible. She acknowledges that we held that the trial court did not abuse its discretion by excluding as irrelevant evidence of an attorney's referral to a medical provider in *Stephens v. Castano-Castano*, 346 Ga. App. 284, 292 (2) (b) (814 SE2d 434) (2018) (physical precedent only). She argues *Stephens* is distinguishable because in this case, there are attorney referrals to more than one medical provider in

10

addition to the evidence of medical liens and third-party funding. Furthermore, she argues that Adekoya opened the door regarding who referred him to a chiropractor when he testified that Peachtree Orthopedics referred him to Optimum Health. Pursuant to OCGA § 24-6-621, "[a] witness may be impeached by disproving facts testified to by the witness." On cross-examination, Adekoya was asked, "Did [Peachtree Orthopedics] refer you to Optimum Health?" He answered, "Yeah. But I can't remember back. I think so." Joiner-Carosi handed him his Peachtree Orthopedics medical records and asked him to show where it says that Peachtree Orthopedics referred him to the chiropractor. Joiner-Carosi later asked him whether it was still his contention that Peachtree Orthopedics referred him to the chiropractor. He responded, "Yeah. I believe so. Yeah." Adekoya was not able to find anything in his medical records saying that Peachtree Orthopedics had referred him to the chiropractor.

Outside of the presence of the jury, the trial court discussed with counsel whether Adekoya's testimony had opened the issue of whether he had been referred to the chiropractor by his attorneys. Joiner-Carosi argued that who referred Adekoya for chiropractic treatment was relevant, contending that Adekoya chose to listen to his attorney who referred him to another medical provider rather than following his

11

physician's prescribed treatment. The trial court ruled it would not allow Joiner-Carosi to get into the issue of how Adekoya was referred to his treating physicians unless the defense could show something contradicting Adekoya's testimony that he was referred to the chiropractor by another physician.

The trial court allowed Joiner-Carosi to question Adekoya about how he was referred to Optimum Healthcare without the jury being present. Joiner-Carosi asked, "And your attorney referred you to Optimum Health; is that correct?" Adekoya responded, "I – I can't remember that. I told you." After showing Adekoya a bill from Optimum Healthcare, Joiner-Carosi asked, "And does that refresh your recollection as to who referred you there?" Adekoya answered, "I don't remember. I just know that I went there for treatment." Joiner-Carosi proffered that the bill shows that the law firm representing Adekoya is listed on the bill as the attorney and the law firm would have received a copy of the bill. The trial court asked, "Would you agree with me, Counselor, that doesn't mean they referred him?" Joiner-Carosi's counsel responded, "No. I do agree with that, Judge." Regarding the same bill, the trial court later asked Joiner-Carosi's counsel, "You agreed that did not denote a referral; correct?" Joiner-Carosi's counsel responded, "That's correct, Judge." The trial court ruled that Joiner-Carosi could not impeach Adekoya by asking him about whether his

12

attorneys referred him for chiropractic treatment, concluding that "although the door may have been opened, there's nothing to impeach him with."

On appeal, without citation to the record, Joiner-Carosi again contends that there was evidence that Adekoya stopped treatment with one provider after the referral by his attorney to another provider and argues that the evidence as to why he chose not to follow his physician's prescribed treatment is relevant.

When Joiner-Carosi questioned Adekoya outside of the presence of the jury, she was unable to contradict his testimony that he was referred to his chiropractor by Peachtree Orthopedics. Furthermore, although Joiner-Carosi proffered Adekoya's medical records, those records did not show that Adekoya's counsel had referred Adekoya to his chiropractor. Joiner-Carosi conceded that the fact that the law firm representing Adekoya was listed as the attorney on the Optimum Health bill did not mean that the law firm had referred him to Optimum Health. Consequently, we agree with the trial court that Joiner-Carosi did not show that she had any evidence that his attorneys referred him to Optimum Health. Other than her contention that Adekoya chose not to follow his physician's prescribed treatment because his attorneys referred him to a chiropractor, Joiner-Carosi does not explain how evidence of attorney referrals to Adekoya's medical providers would be relevant to the issues in this case.

13

Thus, Joiner-Carosi has not shown that the trial court erred in excluding evidence of regarding any attorney referral of Adekoya to his medical providers.

4. Joiner-Carosi next contends that the trial court erred by excluding evidence regarding Adekoya seeking treatment on medical liens and Adekoya's contracts with his medical providers. Again, we find no reversible error.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Dept. of Transp. v. Mendel*, 237 Ga. App. 900, 902-903 (2) (517 SE2d 365) (1999). Pretermitting whether the trial court erred in excluding evidence of medical liens and Adekoya's contracts with his medical providers, we conclude that Joiner-Carosi has failed to show that reversal is warranted. "In order to constitute reversible error, both error and harm must be shown." *Pearlman v. Pearlman*, 238 Ga. 259, 260 (2) (232 SE2d 542) (1977).

On appeal, Joiner-Carosi contends that the relationship between the medical providers, Cherokee Funding, and Adekoya would show the incentive of the medical providers to link Adekoya's injuries to the September 17, 2016 motor vehicle collision. She also argues that evidence of the lien interest given to medical providers and the details of the contracts that Adekoya signed would show that Adekoya has a reason to bolster his claim for injury and pain and suffering damages. In addition,

14

Joiner-Carosi argues that Cherokee Funding's relationship to this case, including the treatments Cherokee Funding authorized and the amounts it paid for the medical bills, is admissible to show the reasonableness of the medical expenses.

In support of these arguments, Joiner-Carosi asserts that the evidence excluded by the trial court would have shown that Cherokee Funding approved Adekoya to be treated at Peachtree Orthopedics and approved him for twelve sessions of physical therapy at Peachtree Orthopedics. She also contends that the personal injury contract and authorization between Adekoya and Optimum Health would have shown that Optimum Health would be paid from Adekoya's recovery. However, aside from her speculation that "Cherokee Funding partnered with Peachtree Orthopedics to invest in lawsuits in this case, and generally," and that the amounts paid by Cherokee Funding were "likely heavily discounted from the billed amount," she does not explain how this evidence would have shown the incentive of the medical providers to link Adekoya's injuries to the motor vehicle accident, that Adekoya had a reason to bolster his claim for damages, or that the medical bills were unreasonable. As we stated in Division 2, we will not reverse cases based on speculation. *In re Estate of Dunn*, 236 Ga. App. at 212 (1) (b). "[A] case will not be reversed merely because error may have occurred. [Joiner-Carosi] is required to show harm as well as error to

prevail on appeal, and this [she] must show by the record as harm cannot be established by unsupported assertions contained in trial briefs." *Hertz Corp. v. McCray*, 198 Ga. App. 484, 486 (2) (402 SE2d 298) (1991) (citations omitted). Joiner-Carosi has not shown by the record that she was harmed by the exclusion of evidence related to medical liens and medical funding. "[T]herefore, no reversible error appears." *Pearlman*, 238 Ga. at 260 (2).

*Judgment affirmed. Miller, P. J., and Mercier, J., concur in judgment only.*